847 P.2d 327

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Rito Antonio ARIAS, Defendant–
Appellant.**

No. 13484.

Court of Appeals of New Mexico.

Jan. 12, 1993.

Tom Udall, Atty. Gen., Max Shepherd, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Vince D'Angelo, Albuquerque, for defendant-appellant.

## OPINION

ALARID, Chief Judge.

Defendant appeals from the judgment and order convicting him of voluntary manslaughter, criminal trespass, shooting at an inhabited dwelling, and tampering with evidence. Specifically, Defendant appeals only the voluntary manslaughter conviction. The sole issue is whether the trial court erred in not instructing the jury on involuntary manslaughter under Defendant's "imperfect self-defense" theory. We reverse and remand for a new trial on the voluntary manslaughter conviction.

## FACTS

Defendant was convicted of voluntary manslaughter for the death of Mike McKee (McKee). Defendant and a friend, Vincent Vasquez "German" (German), dropped two girlfriends at their home and were waiting for them in their automobile. There was a party in progress at the house next door and two of the party guests, David Wages and Eddie Franco, stepped outside. Defendant testified that the two men approached their automobile and were saying something to German. Apparently, German and Franco knew one another and exchanged hostile words. Defendant exited the automobile, words were exchanged between German and Wages, and German punched Wages in the face. Wages and Franco ran back into the house and sought to arm themselves. Meanwhile, German retrieved a rifle from the automobile he was in. By that time, the victim, McKee, who was unarmed, exited the party to see what was occurring. McKee approached German, who was carrying the rifle, and asked him why he had hit Wages. German pointed the rifle between McKee's eyes and McKee shoved the weapon aside and pushed German. German thrust the rifle into Defendant's hands and began to fight with McKee. At that point, Franco and another party guest, Mendoza exited the house armed with boards.

The testimony given concerning the circumstances of the shooting was conflicting. Franco and Mendoza testified that Defendant fired the first shot towards them as they approached German and McKee. Defendant testified that he fired the first shot toward German and McKee as they were fighting. Defendant was holding the rifle across his body, believed Mendoza and Franco were going to attack, and pulled the trigger. Following that first shot, McKee ran towards the entrance of the house where the party was being held. Mendoza testified that he saw Defendant hold the rifle in one hand and shoot the second shot towards McKee as he was running back to the house. Defendant testified that he fired the second shot towards Franco and Mendoza, who were armed with boards and

approaching him. He further testified that he never intended to shoot anyone, that the bullets struck McKee accidentally, and that he did not know that anyone had in fact been shot. Defendant submitted a jury instruction on involuntary manslaughter patterned after SCRA 1986, 14–231 and the trial court rejected it. Defendant was convicted of voluntary manslaughter and this appeal followed.

DISCUSSION

Defendant argues that he was entitled to a jury instruction on involuntary manslaughter based on his allegation that he was engaged in self-defense at the time the killing occurred. Specifically, Defendant contends that he was engaged in the lawful act of self-defense but acted negligently in so doing. The State argues that Defendant was not entitled to the self-defense instruction the jury received, much less an instruction on involuntary manslaughter. "Involuntary manslaughter consists of manslaughter committed in the commission of an unlawful act not amounting to [a] felony; or in the commission of a lawful act which might produce death, in an unlawful manner or without due caution and circumspection." NMSA 1978, § 30–2–3(B) (Repl. Pamp.1984). The State's argument is premised on its claim that Defendant was the aggressor and, therefore, could not claim he acted in self-defense.

■ We first deal with the State's argument that Defendant was not entitled to a jury instruction on self-defense. The State argues that since the evidence revealed that Defendant and German were the aggressors in the incident which led to the killing, Defendant was not entitled to avail himself of the theory of self-defense. In order to warrant a self-defense instruction, the evidence must be sufficient to raise a reasonable doubt in the minds of the fact finder concerning whether a defendant accused of homicide acted in self-defense. *State v. Martinez*, 95 N.M. 421, 622 P.2d 1041 (1981). A self-defense instruction is required in a homicide prosecution whenever a defendant presents evidence which is sufficient to allow reasonable minds to differ with respect to all the ele-

ments of the defense. *State v. Branchal*, 101 N.M. 498, 684 P.2d 1163 (Ct.App.1984). A valid self-defense claim consists of evidence that Defendant was put in fear by the apparent danger of immediate harm, that the killing resulted from that fear, and that Defendant acted as a reasonable person would act under the circumstances. *Id.*

■ Defendant testified that he was in fear of great bodily harm when he saw the men exit the party after they had armed themselves with boards. He further testified that he fired the rifle towards the two armed men as they approached him because he believed they were going to attack him. Defendant also testified that after that shot was fired, one of the armed party guests turned around but the other continued his approach and defendant yelled for him to stop and shot in the guest's direction. The evidence revealed that Defendant was faced with a situation in which his companion arguably provoked an encounter into which Defendant was drawn. While it is true that Wages and Franco initially retreated into the residence, they quickly returned and were armed with boards. Defendant testified that he had no idea how many other party guests would be coming to the aid of those already embroiled in the fight. Defendant testified that he felt outnumbered by others who were exiting from the house and that he fired the rifle to protect himself, believing that Wages and Franco were going to attack. The trial court found that this testimony was sufficient to raise a reasonable doubt in the mind of the fact finder concerning whether the elements of self-defense were present. *See id.* We agree.

The state's argument that the trial court should have refused the jury instruction on self-defense, based on the aggressor status of defendant and German, ignores the fact that the supreme court has adopted SCRA 1986, 14–5191. This jury instruction deals with a defendant's limitations on claiming self-defense and pertains to situations in which the defendant is the aggressor. The record reveals that in addition to self-defense and defense of another instructions,

the jury was given the above self-defense limitation instruction. *See generally Alexander v. Delgado,* 84 N.M. 717, 507 P.2d 778 (1973) (supreme court precedent controls); *State v. Jennings,* 102 N.M. 89, 691 P.2d 882 (Ct.App.1984) (court of appeals lacks authority to set aside approved jury instructions). Therefore, we find the State's argument that Defendant was not entitled to a self-defense instruction, as well as the authority it cites for the argument, unpersuasive. Rather, since evidence was presented to create a factual question concerning whether Defendant acted in self-defense, the jury was properly instructed on that defense. *See State v. Ho'o,* 99 N.M. 140, 654 P.2d 1040 (Ct.App. 1982) (defendant is entitled to a jury instruction on the theory of his case if the evidence exists to support it). *See also Martinez.*

■ We next deal with the question of whether the trial court erred in not instructing the jury on involuntary manslaughter. Defendant argues that he was entitled to the instruction based on his theory that he lawfully defended himself but in a negligent manner. In order for there to be involuntary manslaughter, a killing by a lawful act requires consideration of the manner in which the act was performed. *See State v. Grubbs,* 85 N.M. 365, 512 P.2d 693 (Ct.App.1973). Therefore, in line with the manner in which our involuntary manslaughter statute, Section 30-2-3(B), is drafted, the jury is required to consider whether the lawful act of self-defense was performed in an unlawful manner or without due caution and circumspection. *Id.* at 366–67, 512 P.2d at 694–95. The statutory phrase "without due caution and circumspection" involves the concept of "criminal negligence." *Id.* at 367, 512 P.2d at 695. Criminal negligence includes conduct which is reckless, wanton, or willful. *Id.*

■ As we noted earlier, a defendant is entitled to a jury instruction on the theory of his case as long as the evidence exists to support it. *See Ho'o.* In placing this case on the general calendar, we specifically instructed the parties to brief the effect, if any, of the California cases of *People v. Glenn,* 229 Cal.App.3d 1461, 280 Cal.Rptr. 609 (1991), and *People v. Welch,* 137 Cal. App.3d 834, 187 Cal.Rptr. 511 (1982). Those two cases basically dealt with issues similar to the one raised by Defendant concerning the trial court's refusal to give an involuntary manslaughter jury instruction based on the Defendant's theory of imperfect self-defense. The courts in *Glenn* and *Welch* held that such an omission constituted prejudicial error, where there was evidence to support such an instruction, and reversed and remanded for new trials.

In *Glenn,* the defendant and the victim began arguing in a restaurant over money left on the counter by the victim. The defendant testified that after a verbal altercation, he turned and walked to the door and heard the victim coming toward him from behind and believed he was about to be attacked. The defendant offered conflicting versions of how he stabbed the victim. Under one version, he testified he was carrying a knife for protection and turned and stabbed the victim, that he intended to injure him, but not to kill him. The trial court refused to instruct the jury on involuntary manslaughter, based on its determination that there was a lack of sufficient evidence to support such theory. The jury convicted the defendant of voluntary manslaughter. On appeal, the court in *Glenn* reversed the defendant's conviction and held:

> A person who kills another in the honest but unreasonable belief in the necessity to defend against imminent peril to life or great bodily injury may be guilty of voluntary or involuntary manslaughter depending on the [jury's determination of whether defendant had] an intent to kill.

*Id.,* 280 Cal.Rptr. at 612.

The court further noted that although the evidence, including the defendant's own testimony was conflicting as to this issue, the court must instruct the jury on every theory of the case which is supported by substantial evidence.

Similarly, in *Welch,* the defendant and the victim became embroiled in an argu-

ment in a bar and the victim told the defendant that he was going to "kick his ass." The defendant testified that he was taking medication, Coumadin, which prevents his blood from clotting, and feared that he would suffer severe injury or death if he was injured by the victim. The defendant stated that he pulled out a gun and told the victim to "stop" and "stay back" but the victim kept coming. The defendant also testified that when the victim refused to stop, he did not point the gun, but just raised it and fired, without intent to kill. He stated that his sole intention was to prevent the attack.

The *Welch* Court held that there was evidence in the record upon which a jury could conclude that the defendant did not intend to kill the victim when he fired the weapon. The Court noted that under such facts, a jury could return a verdict of involuntary manslaughter if it found "that the nature of the attack did not justify the resort to deadly force in self-defense or that the force used in self-defense exceeded that which was reasonably necessary to repel the attack." *Id.*, 187 Cal.Rptr. at 514.

■ We find the rationale in *Glenn* and *Welch* persuasive in resolving this appeal for a number of reasons. First, California and New Mexico have virtually identical involuntary manslaughter statutes. *See* Cal.Penal Code § 192(b) (West 1988); § 30–2–3(B). Specifically, each statute provides for lawful act or criminal negligence manslaughter. In situations where this "imperfect" right of self-defense is recognized, it is generally the case that, where the facts would entitle the defendant to a self-defense instruction, an instruction of the imperfect self-defense variety should also be given. *See* 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law*, § 7.11 (1986). Second, California, like New Mexico, adheres to the legal proposition that a defendant is entitled to a jury instruction on his theory of the case as long as there is sufficient evidence to support it. *See, e.g., Ho'o; Welch.* Third, courts in other jurisdictions with involuntary manslaughter statutes similar to New Mexico's have held that where the facts

support it, an instruction on imperfect self-defense should be given. *See, e.g., State v. Atwood*, 105 Idaho 315, 669 P.2d 204 (1983); *State v. Scobee*, 242 Kan. 421, 748 P.2d 862 (1988). Furthermore, in deciding whether an instruction is proper, the trial court must not weigh the evidence but simply must determine whether such evidence exists. *State v. Privett*, 104 N.M. 79, 717 P.2d 55 (1986).

Like the *Glenn* and *Welch* cases, we believe the facts in this case are such that an instruction on involuntary manslaughter should have been given based on Defendant's theory of imperfect self-defense. As noted, two bullets hit the victim. We do not know which was the fatal shot. If it was the second shot, while the victim was retreating, we would be inclined to agree with the State that an instruction on self-defense should not have been given. If it was the first shot, then at that point, Defendant could be viewed as being in a position where his safety or the safety of German was threatened. Franco and Mendoza were approaching Defendant with boards. If, in an attempt to protect himself or ward off the attackers, Defendant inadvertently shot the victim, then his actions could be viewed as being the commission of a lawful act [self-defense] committed in an unlawful manner or without due caution and circumspection. *See* § 30–2–3(B); *see generally State v. Gregory*, 218 Kan. 180, 542 P.2d 1051 (1975) (use of excessive force may be found to be "unlawful" manner of committing the "lawful act" of self-defense, and thereby supply the element of involuntary manslaughter). Based on the above, the instruction on involuntary manslaughter based on negligent self-defense should have been given. *See Ho'o; see also Glenn; Welch.*

■ The State argues that since the jury convicted Defendant of second degree murder, despite the self-defense instructions which were given, it did not believe Defendant's claim of self-defense. We understand this portion of the State's argument to assert that the trial court's failure to instruct on involuntary manslaughter under these circumstances constituted harmless error. We disagree. It is well-established that the failure to give such an

instruction which is supported by the evidence cannot be deemed to be harmless error. *See State v. Benavidez,* 94 N.M. 706, 616 P.2d 419 (1980). Furthermore, the jury, as instructed in this case, only had the options of either accepting or rejecting Defendant's theory on self-defense and, therefore, either acquitting or finding him guilty. In contrast, had the jury been properly instructed on Defendant's theory of "imperfect" self-defense in the context of involuntary manslaughter, it would have had the option of believing Defendant's self-defense theory but concluding that he acted unlawfully in defending himself and, therefore, convicting him for the homicide. Based on the above, a new trial is warranted.

CONCLUSION

Based on the foregoing, Defendant's voluntary manslaughter conviction is reversed and this case remanded for a new trial on that count.

We note that during the pendency of this appeal counsel for Defendant died. On remand we direct the district court to take such steps as are necessary to insure that the case proceeds with promptness and dispatch. *See* SCRA 1986, 12–302(D) (Repl.1992).

IT IS SO ORDERED.

DONNELLY and BIVINS, JJ., concur.