1997-NMSC-032

943 P.2d 1017

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Jesse SOSA, Defendant–Appellant.**

No. 23562.

Supreme Court of New Mexico.

July 18, 1997.

Miller, Stratvert, Torgerson & Schlenker, P.A., Ruth O. Pregenzer, Albuquerque, for Defendant–Appellant.

Tom Udall, Attorney General, Marcia J. Milner, Max Shepherd, Assistant Attorneys General, Santa Fe, for Plaintiff–Appellee.

*OPINION*

BACA, Justice.

### I.

1. Defendant, Jesse Sosa, appeals his conviction and sentencing for involuntary manslaughter, *see* NMSA 1978, 30–2–3(B) (1994), shooting into an occupied vehicle causing great bodily harm, *see* NMSA 1978, § 30–3–8 (1993), and three counts of aggravated assault with a deadly weapon, *see* NMSA 1978, 30–3–2(A) (1963). Sosa raises the following issues on appeal: whether the district court abused its discretion in sentencing Sosa as an adult rather than as a juvenile; whether the district court abused its discretion in restricting voir dire pertaining to juror bias against gangs; whether the district court abused its discretion in denying Sosa's motion for a new trial based on newly-

discovered evidence; whether Sosa received ineffective assistance of counsel; whether the jury received ambiguous or erroneous jury instructions; and whether the sentencing court violated Sosa's right to be free from double jeopardy. We review this case pursuant to NMSA 1978, 34–5–14(C) (1972) (matters appealed to court of appeals and certified to Supreme Court). We reverse Sosa's conviction for involuntary manslaughter, affirm the remaining convictions, and remand for resentencing and entry of an amended judgment.

## II.

2. A drive-by shooting in Las Cruces, New Mexico left a high school student named Johnny Reyes dead. Seventeen year old Jesse Sosa was the driver of the car from which the fatal shot issued. Sosa and the shooter, Jesus Loera, were tried together. Jesse Saenz was charged with tampering with evidence and conspiracy to commit tampering with evidence for his involvement in the events following the shooting.

3. At trial Loera presented the following testimony to support his defense of imperfect self-defense. Loera had been the victim of two drive-by shootings, including an incident involving a gang member named Fernando, which caused him to be afraid for his life. On the night in question Sosa drove Loera and his friends to Las Cruces. Loera took a gun with him because he was afraid of being shot. The passengers of a truck driving near Sosa's car acted in a hostile manner towards the passengers of Sosa's car. Loera became afraid that Fernando was in the truck and, out of fear, pulled his gun and fired several random shots, killing Reyes.

4. Sosa also testified at trial. Apparently, while driving in Las Cruces, Sosa became fearful of the occupants of Reyes's truck because someone reached down for something under the seat. Sosa feared that the occupant of Reyes's truck was reaching for a gun. He also claimed that the shooting was committed in self-defense. Sosa falsely testified that he was not aware that Loera had a gun. During the sentencing hearing Sosa admitted that he knew Loera had a gun, but

denied any knowledge that Loera intended to shoot at the occupants of the truck.

5. Sosa was acquitted of first degree murder and the lesser included offenses of second degree murder and voluntary manslaughter. He was convicted of involuntary manslaughter, shooting into an occupied vehicle causing great bodily harm, and three counts of aggravated assault with a deadly weapon. The district court sentenced Sosa as an adult to sixteen and a half years of incarceration.

## III.

6. On appeal, we address the following issues: whether the district court abused its discretion in sentencing Sosa as an adult; whether the district court abused its discretion by prohibiting certain voir dire questions concerning jurors' attitudes towards gangs; whether the district court abused its discretion in denying Sosa's motion for a new trial based on newly-discovered evidence; whether Sosa received ineffective assistance of counsel; whether the jury instructions were fatally ambiguous or erroneous; and whether the trial court violated Sosa's right to be free from double jeopardy at the sentencing stage of the proceeding. The district court did not abuse its discretion in sentencing Sosa as an adult, in restricting the scope of voir dire on bias against gangs, or in denying Sosa a new trial. Sosa failed to establish that he received ineffective assistance of counsel. The majority of jury instructions were not so erroneous or ambiguous as to rise to the level of fundamental error. However, submission of the instruction on involuntary manslaughter constituted a fundamental and harmful error requiring reversal of the involuntary manslaughter conviction. Finally, Sosa was not subject to double jeopardy when he was sentenced for both shooting into an occupied vehicle and aggravated assault. We therefore reverse Sosa's conviction for involuntary manslaughter, affirm the remaining convictions, and remand this case to the district court for resentencing and entry of an amended judgment.

### A.

7. Sosa contends that the district court abused its discretion on three occasions during the trial proceedings. This Court will find an abuse of discretion when the lower court's decision " 'is clearly against the logic and effect of the facts and circumstances of the case.' " *State v. Apodaca,* 1994 NMSC 121 ¶ 23, 118 N.M. 762, 770, 887 P.2d 756, 764 (quoting *State v. Simonson,* 100 N.M. 297, 301, 669 P.2d 1092, 1096 (1983)). Furthermore, we will not find an abuse of discretion " 'unless we can characterize [the district court's determination] as clearly untenable or not justified by reason.' " 1994 NMSC 121 ¶ 23, 887 P.2d 756 (quoting *State v. Litteral,* 110 N.M. 138, 141, 793 P.2d 268, 271 (1990)). The moving party bears the burden of establishing an abuse of discretion. *See State v. Wiberg,* 107 N.M. 152, 156–57, 754 P.2d 529, 533–34 (Ct.App.1988).

8. We begin with Sosa's claim that the district court abused its discretion by sentencing him as an adult. Under NMSA 1978, 31–18–15.2(A) (1994) (defining serious youthful offender as used within Criminal Sentencing Act), Sosa is a serious youthful offender. Where a serious youthful offender is convicted of a lesser offense than first degree murder, the offender will be sentenced pursuant to the provisions of the Children's Code. *See* NMSA 1978, 31–18–15.3(F) (1993) (serious youthful offender; disposition). However, the Children's Code, NMSA 1978, 32A–2–20(B) (1995), allows the sentencing judge to invoke an adult sentence if certain findings in the record support the judge's determination that the offender is not amenable to treatment or rehabilitation as a child in available facilities. The court must make findings on the following seven statutory factors in making that determination:

(1) the seriousness of the alleged offense;

(2) whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner;

(3) whether the alleged offense was against persons or against property, greater weight being given to offenses against

persons, especially if personal injury resulted;

(4) the sophistication and maturity of the child as determined by consideration of the child's home, environmental situation, emotional attitude and pattern of living;

(5) the record and previous history of the child;

(6) the prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the child by the use of procedures, services and facilities currently available; and

(7) any other relevant factor, provided that factor is stated on the record.

Section 32A–2–20(C).

9. The purpose of these findings is to show that the district court gave proper consideration to the issue of amenability to treatment or rehabilitation. *See, e.g., State v. Doe,* 97 N.M. 598, 600, 642 P.2d 201, 203 (Ct.App.1982) (evaluating similar provision of Children's Code and noting that findings demonstrate that consideration was given to amenability question). This determination is ultimately left to the discretion of the district court. *See* § 32A–2–20(A).

10. Sosa claims that the record reflects uncontradicted evidence that he is amenable to treatment as a child in available facilities. We disagree. The district court considered reports and testimony from the New Mexico Department of Corrections, a forensic psychologist, and the director of the Department of Psychological Services at the New Mexico Boys School in determining that Sosa was not amenable to treatment or rehabilitation as a child in available facilities. As required by statute, the court weighed several additional factors in arriving at the conclusion that Sosa should be sentenced as an adult. The serious nature of Sosa's offense, which resulted in the death of a young man, weighed in favor of sentencing Sosa as an adult. The judge expressly acknowledged that premeditation was established at trial based on: the testimony of the man who provided Sosa and Loera with the gun used in the shooting; the testimony of one of Sosa's passengers that Sosa uttered the following words just prior to the shooting, "Get ready. Do it now, do it now."; and Sosa's

**570**

positioning of his car behind Reyes's truck in such a manner that Loera could easily shoot at the truck. The premeditated and violent nature of the shooting also weighed in favor of sentencing Sosa as an adult. The offense was against a person and resulted in a fatal personal injury, also lending support to an adult sentence. The judge found that only a mature person would be allowed to drop out of school, own a vehicle, father a child, maintain employment, and be out on the streets late at night, as Sosa had. Maturity also lends support for sentencing as an adult. Sosa's previous history, which included evidence of gang activity and use of firearms, coupled with perjury during trial, also supported sentencing as an adult. *See, e.g., State v. Doe,* 99 N.M. 460, 464, 659 P.2d 912, 917 (Ct.App.1983) (noting that instances of conduct are relevant to the inquiry of amenability to treatment or rehabilitation as a child within existing facilities). The court also considered the limited time during which Sosa could be held at the New Mexico Boys School as a result of his age. The court noted that the brief period of treatment available to Sosa was insufficient to accomplish rehabilitation and protection of the public, providing further support for an adult sentence.

■ 11. The court did take notice of the testimony of both the forensic psychologist and the director of psychological services at the New Mexico Boys School, testimony which supported Sosa's amenability to rehabilitation. The court also noted that a diagnostic evaluation from the corrections department did not contradict this testimony. However, the court determined that this testimony was outweighed by substantial evidence relevant to the other statutory factors that it had to consider.

12. In light of the judge's methodical documentation of his consideration of the evidence as applied to the requisite statutory factors, we conclude that the district court made a reasoned and justified determination that Sosa should be sentenced as an adult. That determination was not against the logic and effect of the facts of the case, nor was it clearly untenable. Therefore, Sosa has failed to establish that the court abused its discretion in sentencing him as an adult.

13. Next we address Sosa's allegation that the district court abused its discretion in denying his attorney the opportunity to pose fact-specific questions to potential jurors about their biases and prejudices regarding gangs. Sosa contends that the court's refusal to permit such questioning denied him the opportunity to establish that certain jurors were biased against gang members, and consequently against him: a right he contends is protected by the Sixth Amendment of the United States Constitution and Article II, § 14 of the New Mexico Constitution.

■ 14. Certainly a defendant has a Sixth Amendment right to a trial by a neutral and impartial jury. *See State v. Isiah,* 109 N.M. 21, 26, 781 P.2d 293, 298 (1989), *overruled on other grounds by State v. Lucero,* 116 N.M. 450, 453–54, 863 P.2d 1071, 1074–75 (1993). Voir dire assists in the selection of such a jury. *Id.* However, courts are given broad discretion in limiting the scope of questioning during voir dire. *Id.* at 27, 781 P.2d at 299. Courts are not required to "approve every question defendant desires to ask." *Id.* If the questions allowed are sufficient to probe juror bias on a specific issue, the court's refusal to allow additional fact-specific questions does not amount to an abuse of discretion. *Id.* at 27–28, 781 P.2d at 299–300.

■ 15. Sosa's attorney was provided ample opportunity to question potential jurors about their biases and prejudices towards gangs. The district court only prohibited certain questions requiring jurors to consider how they would respond to the specific facts involved in Sosa's case. In addition, the district court emphasized to the jurors the importance of setting aside preconceived feelings about gangs in following the court's instruction on the law. While not dispositive, jurors' assurances that they are able to set aside their biases in order to reach a verdict on the basis of the court's instruction on the law and the facts presented at trial are relevant to the sufficiency of voir dire. *See State v. Pace,* 80 N.M. 364, 367, 456 P.2d 197, 200 (1969). We conclude that Sosa was permitted to complete suffi-

cient voir dire concerning bias against gangs. Sosa has failed to establish that the district court's voir dire restrictions were unjustifiable, amounting to an abuse of discretion.

16. Finally, Sosa contends that the district court abused its discretion in denying his motion for a new trial following the discovery of additional evidence. A motion for a new trial on the basis of newly-discovered evidence will be granted if the evidence meets the following requirements:

(1) it will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it could not have been discovered before the trial by the exercise of due diligence; (4) it must be material; (5) it must not be merely cumulative; and (6) it must not be merely impeaching or contradictory.

*State v. Litteral,* 110 N.M. 138, 144, 793 P.2d 268, 274 (1990). Motions for new trials on the basis of newly-discovered evidence are not encouraged, *see State v. Shirley,* 103 N.M. 731, 733, 713 P.2d 1, 3 (Ct.App.1985), and denial of such a motion will only be reversed if the district court has acted arbitrarily, capriciously, or beyond reason, *Litteral,* 110 N.M. at 144, 793 P.2d at 274. The probability of newly discovered evidence changing a verdict is a question "peculiarly addressed to the discretion of the trial court." *Shirley,* 103 N.M. at 733, 713 P.2d at 3.

17. At trial Sosa presented a theory of self-defense based on his fear that the occupants of the Reyes truck had a gun. Sosa testified that he saw one of the occupants of the truck reach down under the seat for what he believed would be a gun. Sosa was unable to produce corroborating evidence to support the theory of self-defense. Following his conviction, Sosa discovered a witness who allegedly saw a gun in the truck on the night of the shooting. Sosa concludes that a new trial including the testimony of the newly-discovered witness would alter the jury verdict. Thus, according to Sosa, the district court abused its discretion in denying his motion for a new trial.

18. The evidence at issue in the instant case consists of the statement of a thirteen year old who may have observed a gun on the floor of the truck on the night of the shooting. However, upon inquiry, the witness stated that she might have seen a seat lever rather than a gun. In addition, at trial no one testified that the occupants of the truck possessed a firearm. This fact distinguishes the instant case from *State v. Volpato,* 102 N.M. 383, 385, 696 P.2d 471, 473 (1985), the case cited by Sosa to support his motion for a new trial. In *Volpato* the newly-discovered witness's testimony corroborated testimony given at trial. *Id.* Given the witness's uncertainty as to whether she saw a gun in the truck, and the absence of testimony or evidence to substantiate her observation, the district court legitimately exercised its discretion in denying the motion for a new trial. We affirm the denial.

19. Sosa also requests a new trial based on his allegation that he was denied due process of law because his attorney, Irwin, represented both Sosa and Sosa's co-defendant Jesse Saenz, without advising either defendant of the conflict of interest and their right to independent counsel. Finding no conflict inherent in Irwin's representation of Sosa and Saenz, we hold that Sosa received effective assistance of counsel.

20. The right to effective assistance of counsel free from conflicts of interest is guaranteed by the Sixth Amendment of the United States Constitution. *See, e.g., Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981) ("Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest."); *State v. Santillanes,* 109 N.M. 781, 782, 790 P.2d 1062, 1063 (1990) (finding conflict of interest deprived defendant of right to effective assistance of counsel guaranteed by Sixth Amendment to United States Constitution). When representing co-defendants, an attorney must determine that such representation will not materially limit representation of each client, and each client must consent to the attorney's continued representation. Rule 16–107(B) NMRA 1997 (conflict of interest; general rule). Ineffective assistance of counsel based on a conflict of interest requires a showing of an actual

conflict of interest rather than the possibility of conflict. *See Churchman v. Dorsey*, 1996 NMSC 033 ¶ 12, 122 N.M. 11, 13, 919 P.2d 1076, 1078 (1996). In evaluating whether an actual conflict exists, the court must assess whether the defense counsel actively represented conflicting interests. 1996 NMSC 033 ¶ 13, 919 P.2d 1076.

21. Irwin was appointed to represent both Saenz and Sosa. Saenz entered a plea to the misdemeanor of obstruction of justice resulting in a 364 day sentence for his involvement in the events which occurred following the shooting of Reyes. Sosa now accuses Irwin of failing to investigate Saenz's role in Sosa's life, and of failing to call Saenz as a witness at Sosa's trial to testify that Saenz pressured Sosa into becoming involved in gang-related activity. Sosa asserts that such testimony would have assisted in establishing a diminished capacity or duress defense, and might have jeopardized Saenz's chances of obtaining a misdemeanor plea. Sosa concludes that Irwin's failure to call Saenz as a witness amounted to ineffective assistance of counsel.

22. Sosa failed to prove that Irwin actively represented conflicting interests adversely affecting Sosa's defense. Sosa did not present evidence establishing that Irwin was forced to abandon the defenses of diminished capacity or duress in order to protect Saenz. Unlike the case of *State v. Santillanes*, 109 N.M. at 782–83, 790 P.2d at 1064–65, where an attorney suppressed a co-defendant's admission to a shooting while the defendant was being charged with that shooting, the instant case does not present a clear example of conflict of interest. We conclude that the alleged conflict at issue in the instant case is not sufficient to establish an actual conflict of interest. Irwin effectively represented both Sosa and Saenz.

23. Sosa presented a four-pronged attack on the jury instructions implemented by the district court, contending that each jury instruction error violated his right to due process and constituted a fundamental error requiring reversal. Having failed to proffer accurate instructions, object to instructions given, or otherwise preserve the issue for appeal, defendant is not entitled to consideration of his due process claim, and we will limit our evaluation to the claim of fundamental error. *See Santillanes v. State*, 115 N.M. 215, 218, 849 P.2d 358, 361 (1993).

24. Fundamental error requiring reversal occurs when a jury instruction fails to include an essential element of an offense or a defense to a charge, leaving the question of guilt so doubtful that it would shock the conscience to permit the verdict to stand. *See, e.g., State v. Green*, 116 N.M. 273, 276, 861 P.2d 954, 957 (1993) (fundamental error occurred where essential element was omitted from jury instruction). Fundamental error may also occur when the jury considers an instruction which should not have been submitted to them, or when an instruction which should have been submitted to the jury is omitted. *See State v. Arias*, 115 N.M. 93, 95–96, 847 P.2d 327, 329–30 (1993) (evaluating state's claim that trial court erred in instructing jury on self-defense and defendant's claim that trial court erred in failing to instruct jury on involuntary manslaughter), *overruled on other grounds by State v. Abeyta*, 1995 NMSC 052, 120 N.M. 233, 901 P.2d 164.

25. The adequacy of a jury instruction is evaluated in the context of all the instructions given to the jury, in order to determine whether the instruction accurately states the law. *See State v. Parish*, 1994 NMSC 072 ¶ 4, 118 N.M. 39, 41, 878 P.2d 988, 990. If a jury receives an instruction which is subject to more than one interpretation, the ambiguity may be clarified by another part of the jury instructions. 1994 NMSC 072 ¶ 4, 878 P.2d 988. Use of an ambiguous jury instruction will constitute reversible error where a reasonable juror would have been confused or misdirected by that instruction. 1994 NMSC 072 ¶ 4, 878 P.2d 988. When a jury receives an erroneous instruction, the fundamental error can not be cured by other instructions offered to the jury. 1994 NMSC 072 ¶ 12, 878 P.2d 988.

26. Sosa first notes the district court's failure to instruct the jury on the essential element of unlawfulness as to the charges of homicide, shooting into an occupied vehicle, and aggravated assault. This

Court has held that where a defendant raises the defense of self-defense, unlawfulness becomes a necessary element of the crime charged. 1994 NMSC 072 ¶ 11, 878 P.2d 988. Once the defendant claims that the conduct in question was lawful, the prosecution must prove unlawfulness beyond a reasonable doubt. 1994 NMSC 072 ¶ 13, 878 P.2d 988. Sosa concludes that failure to instruct on the element of unlawfulness amounts to a fundamental error requiring reversal of the relevant convictions.

■ · 27. Sosa did assert self-defense as to each charge, with the result that unlawfulness became a necessary element of each crime charged. However, contrary to Sosa's allegations, the jury was instructed on the element of unlawfulness. Each instruction required the jury to find that Sosa "did not act in defense of himself or others." The import of this finding by the jury is that Sosa acted unlawfully. Alternatively, if the jury found that Sosa acted in self-defense, the jury would have made a finding that Sosa acted lawfully. *See Abeyta*, 1995 NMSC 052 ¶¶ 22–23, 901 P.2d 164 (self-defense is a justification for a killing which renders the killing lawful where all the elements of self-defense are established). Furthermore, the jury was instructed that to convict Sosa for any of these charges, they had to find that he "[committed] an act which the law declares to be a crime." We hold that the district court fulfilled its obligation to instruct the jury on the necessary element of unlawfulness and no fundamental error occurred.

■ 28. Sosa next found error with the jury instructions because they failed to provide for self-defense in relation to the charges of shooting into an occupied vehicle and aggravated assault with a deadly weapon. Sosa was entitled to a jury instruction on self-defense because the law and evidence supported such an instruction, as indicated by the fact that an instruction on self-defense was provided in connection with the charge of homicide. *State v. Ho'o*, 99 N.M. 140, 144, 654 P.2d 1040, 1044 (Ct.App.1982) (holding accused is entitled to jury instruction on his theory of case if theory is supported by evidence).

■ 29. Contrary to Sosa's allegations, the jury instructions relevant to shooting into an occupied vehicle and aggravated assault each required the jury to find that Sosa had not acted in defense of himself or others. While the jury instructions for aggravated assault with a deadly weapon and shooting into an occupied vehicle failed to contain a definition of self-defense, this omission was not sufficient to raise a doubt about Sosa's guilt such that affirmance of the conviction would shock the conscience. *See, e.g., Santillanes*, 115 N.M. at 223, 849 P.2d at 366 ("Having determined that the trial court committed error in failing to instruct the jury on a criminal negligence standard, we must now consider whether the error was harmless or whether it so undermined the reliability of the conviction or prejudiced the defendant's rights as to warrant reversal of his conviction."). We reach this conclusion by reading all of the jury instructions as a whole, and note jury instruction number 15A which sets out the elements required to find self-defense. That instruction provides that:

Evidence has been presented that the defendant killed Johnny Reyes while defending himself or another. The killing is in self-defense if:

1. There was an appearance of immediate danger of death or great bodily harm to the defendant or another as a result of threatening conduct of Johnny Reyes, Jerry Sanchez, Phillip Benavidez, or Rudy Gonzalez; and

2. The defendant was in fact put in fear by the apparent danger of immediate death or great bodily harm and the defendant killed Johnny Reyes, because of that fear; and

3. A reasonable person in the same circumstances as the defendant would have acted as the defendant did.

A reasonable juror would be able to take these elements of self-defense and apply them to the instructions which required a finding of self-defense yet omitted a breakdown of the elements of self-defense. The jury concluded that Sosa did not act in self-defense in relation to any of the charges.

Their conclusion is supported by the lack of evidence corroborating Sosa's allegation that one of the occupants of Reyes's truck reached under the seat for what Sosa feared would be a gun. The district court did not commit fundamental error requiring reversal by omitting a definition of self-defense from the jury instructions on aggravated assault with a deadly weapon and shooting into an occupied vehicle.

30. Sosa also argues that the district court's failure to provide jury instructions establishing the prosecution's burden of disproving self-defense beyond a reasonable doubt amounts to fundamental error requiring reversal. Under New Mexico law, once Sosa raised the defense of self-defense, the prosecution had to prove beyond a reasonable doubt that Sosa did not act in self-defense, a burden allegedly omitted from the jury instructions. *Parish*, 1994 NMSC 072 ¶¶ 10–11, 878 P.2d 988.

31. The district court provided the following instruction pertaining to the charges of aggravated assault and shooting into an occupied vehicle: "the state must prove to your satisfaction beyond a reasonable doubt ... [t]he defendant did not act in defense of himself or others." We hold that this instruction sufficiently alerts the jury that once Sosa presents evidence of self-defense, the burden shifts to the prosecution to refute this claim. The record establishes that the burden was shouldered by the prosecution, and there was no fundamental error warranting reversal. *Santillanes*, 115 N.M. at 223, 849 P.2d at 366.

32. Sosa's final argument pertaining to jury instructions is that the district court committed fundamental error by giving the jury an instruction on involuntary manslaughter when there was also an instruction on imperfect self-defense. We have recently established that voluntary manslaughter is the lowest degree of homicide that can be charged where there is imperfect self-defense. *Abeyta*, 1995 NMSC 052 ¶¶ 22–23, 901 P.2d 164 (overruling *State v. Arias*, 115 N.M. 93, 847 P.2d 327 (Ct.App.1993), which permitted submission of instructions on both involuntary manslaughter and imperfect self-defense). Thus, Sosa is correct that allowing the jury to consider an instruction on involuntary manslaughter, when there was sufficient evidence presented at trial to necessitate an instruction on imperfect self-defense, was fundamental error. Furthermore, it is impossible to conclude that such error was harmless because Sosa was convicted of involuntary manslaughter and sentenced to eighteen months in prison, with an additional year resulting from a firearm enhancement. We now reverse Sosa's conviction for involuntary manslaughter.

33. Principles of double jeopardy prevent this court from remanding for a retrial on the homicide charges. "The Fifth Amendment to the United States Constitution and Article II, Section 15 of the New Mexico Constitution each contain a clause providing that no person shall be twice put in jeopardy for the same offense. These clauses protect a defendant from a second prosecution for the same offense after an acquittal, [or after] ... a conviction." *State v. Martinez*, 1995 NMSC 073 ¶ 4, 120 N.M. 677, 678, 905 P.2d 715, 716 (citing *Swafford v. State*, 112 N.M. 3, 7, 810 P.2d 1223, 1227 (1991)). The jury's failure to convict on the charges of first degree murder and voluntary manslaughter amounts to an implicit acquittal of those charges, and we cannot now subject Sosa to further prosecution on those charges. *Id.* Therefore, we reverse Sosa's conviction for involuntary manslaughter and remand for resentencing and entry of an amended judgment. *See State v. Pisio*, 1995 NMCA 009 ¶ 40, 119 N.M. 252, 262, 889 P.2d 860, 870 (reversing one of five convictions and remanding for resentencing and entry of amended judgment), *cert. denied*, 119 NM 20, 888 P.2d 466 (1995). Sosa's sentences for aggravated assault, which total seven and one half years in prison, should not be altered. Nor should the sentence of nine years in prison for the conviction of shooting into an occupied vehicle be altered. The sentence of two and one half years in prison for involuntary manslaughter, which was to be served concurrently with the sentence for shooting into an occupied vehicle, is the only portion of the sentence which should be eliminated.

34. Sosa's final argument to this Court is that the district court violated his constitutional right to be free from double jeopardy at the sentencing stage of the proceedings by failing to merge his convictions for shooting into an occupied vehicle and aggravated assault with a deadly weapon. We do not agree that these offenses should merge for sentencing and hold that the district court did not violate Sosa's right to be free from double jeopardy.

35. The Double Jeopardy Clause of the Fifth Amendment prohibits multiple punishment for the same offense. *See Swafford v. State*, 112 N.M. 3, 7, 810 P.2d 1223, 1227 (1991). As this Court has noted, the only limitation on multiple punishment recognized by the United States Supreme Court, and the courts of New Mexico, is the intent of the legislature. *Id.* at 13, 810 P.2d at 1233. In evaluating whether sentencing for convictions of two or more statutes violates due process, the sentencing court should utilize the two step assessment set forth in *Swafford*. *Id.* The sentencing court should first determine whether the same conduct violates both statutes, meaning the conduct is unitary. *Id.* If the statutes punish the same conduct, the court must then determine whether the legislature intended that a defendant convicted of both offenses receive punishment for both offenses. *Id.* If the legislature did not intend to create separately punishable offenses, the Double Jeopardy Clause will prohibit punishment for both offenses. *Id.*

36. In determining whether the legislature intended to punish both offenses, the sentencing court will look for an express provision allowing for multiple punishments. Absent such a provision, the sentencing court must apply the *Blockburger* test to the elements of each statute to determine whether multiple punishments are permissible. *Id.* at 14, 810 P.2d at 1234. The *Blockburger* test provides:

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact the other does not.

*Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). If the elements of the statutes are not subsumed within each other, there is a presumption that the legislature intended separate punishment for each offense. *Swafford*, 112 N.M. at 14, 810 P.2d at 1234. The presumption may be rebutted by other indicia of legislative intent such as language, history, and the subject of the statutes. *Id.* Of particular relevance to Sosa's case is the observation that "[s]tatutes directed toward protecting different social norms and achieving different policies can be viewed as separate and amenable to multiple punishments." *Id.* The fact that each statute may be violated independent of the other will also lend support to the imposition of sentences for each offense. *Id.* at 14–15, 810 P.2d at 1234–35.

37. In the instant case there is no dispute that the offenses of shooting into an occupied vehicle and aggravated assault with a deadly weapon arose out of unitary conduct. Therefore, we move on to the second prong of our analysis, considering whether the legislature intended to provide multiple punishments for these offenses. There is no express authorization of multiple punishments in either of the statutes. The legislature defined aggravated assault as "unlawfully assaulting or striking at another with a deadly weapon." NMSA 1978, § 30-3-2(A) (1963). The legislature defined shooting at an occupied vehicle as "willfully discharging a firearm at or from a motor vehicle with reckless disregard for the person of another." NMSA 1978, § 30-3-8(B) (1993). Aggravated assault with a deadly weapon requires proof of the victim's belief that he or she was about to be shot, an element not required for the offense of shooting at an occupied vehicle. Shooting into an occupied vehicle requires that the offender know the vehicle was occupied, an element not required for the offense of aggravated assault with a deadly weapon. Thus, the elements of one offense do not subsume those of the other offense. We presume that the legislature intended separate punishments for each offense. *See State v. Gonzales*, 113 N.M. 221, 225, 824 P.2d 1023, 1027 (1992).

38. The distinct social evils proscribed by these two statutes provide additional support for imposition of separate punishments for each offense. The aggravated assault with a deadly weapon statute is "aimed at deterring aggression against other people in which the use of deadly weapons is involved." *State v. Rodriguez*, 113 N.M. 767, 772, 833 P.2d 244, 249 (1992 Ct.App.). The offense of shooting into an occupied vehicle is "designed to protect the public from reckless shooting into a vehicle and the possible property damage and bodily injury that may result." *Gonzales*, 113 N.M. at 225, 824 P.2d at 1027.

39. We also note that each statute may be violated independent of the other, weighing in favor of separate sentencing for each offense. *Id.* It is possible to commit aggravated assault without shooting into a vehicle and it is possible to shoot into a vehicle causing injury or damage without committing assault.

40. We conclude that the legislature intended separate punishments for each offense. The district court did not violate Sosa's right to be free from double jeopardy by sentencing him for aggravated assault with a deadly weapon and for shooting into an occupied vehicle.

### IV.

41. We conclude that the district court did not abuse its discretion at any time; Sosa received effective assistance of counsel; the jury received an erroneous instruction on involuntary manslaughter which amounted to fundamental and harmful error; no other jury instructions were so deficient as to rise to require reversal of the convictions; and Sosa was not subject to double jeopardy at the sentencing stage of the proceeding. We affirm the district court's rulings with the exception of Sosa's conviction for involuntary manslaughter. We now remand for resentencing and entry of an amended judgment.

42. **IT IS SO ORDERED.**

SERNA and McKINNON, JJ., concur.