This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38678**

**STATE OF NEW MEXICO,**

> Plaintiff-Appellee,

v.

**CARLOS A.,**

> Child-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Daniel E. Ramczyk, District Judge**

Hector H. Balderas, Attorney General
Benjamin Lammons, Assistant Attorney General
Santa Fe, NM

for Appellee

The Law Office of Scott M. Davidson
Scott M. Davidson
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**YOHALEM, Judge.**

**{1}**     Defendant Carlos A. (Child) appeals the district court's order entered pursuant to NMSA 1978, Section 32A-2-20 (2009), holding that he is not amenable to treatment or rehabilitation as a juvenile in available facilities. The district court imposed an adult sentence of fifteen years imprisonment, with five of those years suspended. Child contends that the district court abused its discretion when it disregarded unanimous expert opinion and held that Child was not amenable to treatment as a juvenile. Finding no abuse of discretion, we affirm.

**BACKGROUND**

**{2}** The following facts concerning the events of May 26, 2016, which led to the prosecution of Child, were stipulated to by the parties. Child was fifteen years old on May 26, 2016, when he committed the murder of Aliyah Garcia (Victim). Child had spent the day with a group of adults, smoking methamphetamine, and accompanying one of the adults as he sold methamphetamine. Child later reported that he had been smoking methamphetamine every day for the nine months preceding May 26, 2016. Child was with the group when two of the adults broke into a safe and stole a firearm. Later in the day, the group, including Child, drove to a storage unit where they picked up boxes of ammunition. They then drove to the home of a drug dealer, apparently planning to rob him, although the details of the plan were not clear. Informed that the plan had failed, the adults in the car with Child handed guns around and instructed Child and the others to shoot. Child grabbed a gun that was passed to his brother in the back seat and switched seats so he was next to a window and could shoot more easily. The dealer was standing outside his home, speaking with Victim's boyfriend. Victim remained inside a gold sedan owned by her boyfriend. Child fired seven or eight shots in the direction of the dealer, Victim's boyfriend, and the gold sedan. The adults in the car with Child were shooting as well. Victim was struck once in the abdomen by a bullet. She later died at a hospital. Victim's boyfriend was also shot, sustaining relatively minor injuries. It is not clear that Child knew Victim was inside the car, but Child was aware that he was shooting toward people. The stipulated record does not indicate whether the fatal shot came from Child's gun.

**{3}** A grand jury issued a nine-count indictment, charging Child with, among other offenses, first degree murder, felony murder, aggravated battery, and shooting at or from a moving vehicle. On September 19, 2017, after cooperating with the prosecution, Child pled guilty to the reduced charges of second degree murder, contrary to NMSA 1978, Section 30-2-1(B) (1994), and conspiracy to shoot at or from a moving vehicle, contrary to NMSA 1978, Section 30-3-8(A) (1993). Because Child was adjudicated as a "youthful offender" pursuant to NMSA 1978, Section 32A-2-3(J) (2009, amended 2019), Section 32A-2-20(B)(1) required that the district court determine whether Child was amenable to treatment as a juvenile.

**{4}** On June 11, 2019, more than three years after the events leading to Child's conviction, when Child was eighteen years old, the district court held an amenability hearing to determine whether Child was amenable to treatment and rehabilitation as a juvenile or, instead, would be sentenced as an adult to a prison term. No testimony was taken at the amenability hearing. In addition to stipulating to a statement describing the events of May 26, 2016, the course of the criminal proceedings, and Child's plea, the parties submitted the written reports and underlying test results of two experts: Dr. Samuel Roll, a Ph.D. clinical psychologist employed by counsel for Child, and Dr. Dusty Humes, a Ph.D. clinical psychologist employed by the prosecution. The parties also submitted a report prepared by a juvenile probation officer and clinical social worker with the New Mexico Children, Youth and Families Department (CYFD), on behalf of the CYFD probation department. Finally, the parties agreed to the submission of two letters

written by Child, one addressed to the district court and the other addressed to Victim's family. There were no witnesses called by either side. The defense argued that Child was amenable to treatment, and the State argued that Child should be sentenced as an adult.

{5}     The expert reports submitted to the court reviewed Child's background and upbringing, reported on his prior offenses, analyzed the results of psychological testing and interviews, and reviewed Child's history during the three years he had been in CYFD custody preceding the amenability hearing. All three experts concluded that Child was amenable to treatment in available facilities and that the risk to the public of Child reoffending, although not predictable with certainty, was reasonably likely to be low. None of the three reports specifically stated that Child would be ready to return to the community at age twenty-one.

{6}     After reviewing the record and hearing legal argument from the State and counsel for Child, the district court made findings as to each factor listed in concluding that Child was "not amenable to treatment or rehabilitation as a child in available facilities[,]" and that Child was "not eligible for commitment to an institution for children with developmental disabilities or mental disorders[,]" the ultimate findings required by Section 32A-2-20(B) to invoke an adult sentence.

## DISCUSSION

### I.     Standard of Review

{7}     We review a district court's amenability determination for an abuse of discretion. *State v. Nehemiah G.*, 2018-NMCA-034, ¶ 42, 417 P.3d 1175. We will find an abuse of discretion when the district court's decision "is clearly against the logic and effect of the facts and circumstances of the case." *State v. Sosa*, 1997-NMSC-032, ¶ 7, 123 N.M. 564, 943 P.2d 1017 (internal quotation marks and citation omitted). "The question for this Court is not what it would have decided based on the testimony presented below, but whether any rational fact-finder could have determined [the d]efendant was not amenable to treatment as a juvenile." *State v. Trujillo*, 2009-NMCA-128, ¶ 19, 147 N.M. 334, 222 P.3d 1040 (internal quotation marks and citation omitted). "We do not reweigh the evidence or substitute our judgment for that of the district court." *Id.* ¶ 13. "The question is whether the [district] court's decision is supported by substantial evidence, not whether the court could have reached a different conclusion." *In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318. Additionally, a district court "abuses its discretion when it exercises its discretion based on a misunderstanding of the law." *Nehemiah G.*, 2018-NMCA-034, ¶ 42 (internal quotation marks and citation omitted). We review questions of law de novo. *Gabaldon v. Erisa Mortg. Co.*, 1999-NMSC-039, ¶ 7, 128 N.M. 84, 990 P.2d 197 ("All questions of law are reviewed de novo.").

### II.     The Law Governing Amenability Determinations

**{8}** We first address the requirements of the law governing amenability determinations by our district courts. Our Legislature has conferred discretion on the district court to invoke either an adult sentence or juvenile sanctions on a youthful offender. Section 32A-2-20(A) ("The court has the discretion to invoke either an adult sentence or juvenile sanctions on a youthful offender."). A "youthful offender" is defined by Section 32A-2-3(J) to include children between the ages of fourteen and eighteen who have committed any one of fourteen violent felony offenses listed in the statute. Second degree murder, pursuant to Section 30-2-1(B), is on that list. Section 32A-2-3(J)(1)(a).

**{9}** To invoke an adult sentence, the district court must make the following findings: "(1) the child is not amenable to treatment or rehabilitation as a child in available facilities; and (2) the child is not eligible for commitment to an institution for children with developmental disabilities or mental disorders." Section 32A-2-20(B). The court's findings must be case specific. *State v. Jones*, 2010-NMSC-012, ¶ 40, 148 N.M. 1, 229 P.3d 474 ("Nothing in the Delinquency Act indicates that the Legislature ever contemplated that a court could sentence a child as an adult without first making its own determination on the question of amenability to treatment."). Although "[n]on criminal treatment is the rule and adult criminal treatment the exception," and although the juvenile justice system "reflects a policy favoring the rehabilitation and treatment of children[,]" the amenability determination does not allow the district court to rely solely on this policy. *Nehemiah G.*, 2018-NMCA-034, ¶ 22 (internal quotation marks and citation omitted). The district court must "carefully balance the individual and societal interests at stake and . . . determine whether the delinquent child can be reintegrated into public life by the time he or she turns twenty-one." *Id.* ¶ 24.

**{10}** In making the ultimate findings required by Section 32A-2-20(B), our Legislature has provided that the district court must consider the following factors:

>    (1)    the seriousness of the alleged offense;
>
>    (2)    whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner;
>
>    (3)    whether a firearm was used to commit the alleged offense;
>
>    (4)    whether the alleged offense was against persons or against property, greater weight being given to offenses against persons, especially if personal injury resulted;
>
>    (5)    the maturity of the child as determined by consideration of the child's home, environmental situation, social and emotional health, pattern of living, brain development, trauma history and disability;
>
>    (6)    the record and previous history of the child;

(7)     the prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the child by the use of procedures, services and facilities currently available; and

(8)     any other relevant factor, provided that factor is stated on the record.

Section 32A-2-20(C). "[N]one of those factors, standing alone, is dispositive." *Jones*, 2010-NMSC-012, ¶ 41. The district court must consider *each* of the seven listed factors, plus any other relevant factor, in determining whether the child is amenable treatment or rehabilitation, making a finding on each factor and "weighing and balancing[] the statutory factors." *Nehemiah G.*, 2018-NMCA-034, ¶ 45.

**{11}** The state has the burden of proving by clear and convincing evidence that a juvenile "is *not* amenable to treatment or rehabilitation as a child in available facilities[.]" Section 32A-2-20(B)(1) (emphasis added); *see also Nehemiah G.*, 2018-NMCA-034, ¶ 23 (providing that the standard of proof for amenability findings is clear and convincing evidence).

### III.    The District Court Did Not Abuse Its Discretion

**{12}** Child argues that the district court abused its discretion by (1) failing to treat Child as a child, entitled to a presumption of amenability to treatment, rather than as an adult; (2) disregarding uncontradicted expert opinion that Child was amenable to treatment at Camino Nuevo, a CYFD facility; and (3) placing inordinate emphasis on the protection of the community while undervaluing other statutory factors such as Child's immaturity and traumatic background.

### A.    The Court Treated Child as a Youthful Offender

**{13}** Child alleges that the district court abused its discretion by treating him as an adult and improperly placing the burden on Child to prove his amenability to treatment. Child contends that the district court "ignored an important distinction in the Delinquency Act between a 'youthful offender' and 'serious youthful offender.' "

**{14}** A "serious youthful offender" is defined by the Delinquency Act as "an individual fifteen to eighteen years of age who is charged with and indicted or bound over for trial for first degree murder." Section 32A-2-3(H). A "serious youthful offender" is not entitled to the protections of the Delinquency Act and is sentenced as an adult, without an amenability hearing. *See Jones*, 2010-NMSC-012, ¶ 11. A child between the ages of fourteen and eighteen, on the other hand, who is adjudicated for second degree murder, is subject to disposition as a "youthful offender." Section 32A-2-3(J). A "youthful offender" is a "delinquent child" entitled to an amenability hearing and a determination by the district court of his or her amenability to treatment before either juvenile or adult sanctions are imposed, depending on the outcome of the amenability hearing. *See* § 32A-2-3(J); *see also Jones*, 2010-NMSC-012, ¶ 22 (concluding that from the time a first degree murder charge is dropped, a defendant is "a child charged with a youthful

offender offense . . . and as such, he was entitled to the full range of protections afforded by the Delinquency Act," including an amenability determination).

**{15}**     We cannot agree with Child that the district court referred to first degree murder when the court found that Child had committed "the most serious offense possible." Although the court's finding uses the term "murder" without noting the degree, in the context of an amenability determination, the court's finding accurately describes Child's adjudication of second degree murder. Second degree murder is the most serious offense a fifteen-year-old child can commit and still fit within the statutory definition of a "youthful offender." *See* § 32A-2-3(J)(1)(a) (listing second degree murder first in a list of violent felonies decreasing in seriousness that qualify a child fourteen to eighteen years of age as a "youthful offender," entitled to an amenability determination). We conclude that the court's finding correctly reflects the relevant law.

**{16}**     The district court's use of the term "premeditated" to refer to second degree murder, a youthful offender offense, is also supported by statute. The second statutory factor in making an amenability determination requires that the court determine whether "the alleged offense was committed in an aggressive, violent, *premeditated* or willful manner[.]" Section 32A-2-20(C)(2) (emphasis added). The Legislature's requirement of a finding of commission of a crime in "a premeditated manner" plainly is not intended to be limited to first degree murder, where premeditation is an element of the offense. *See Sosa*, 1997-NMSC-032, ¶¶ 5, 10 (holding that the premeditated and violent nature of the shooting where the child was convicted of second degree murder weighed in favor of sentencing child as an adult). Given the stipulated facts in this case, which establish that Child was present during the planning of and preparation for the events of May 26, 2016, including the gathering of firearms and ammunition, and that Child grabbed a gun offered to someone else and fired that gun in the direction of people, we find no error in the court's finding that Child's offense "was done in an aggressive, violent, premeditated, and willful manner." Nor do we see any indication from the inclusion in this finding of the term "premeditated" that the court confused first and second degree murder.

**{17}**     Child's last argument in support of his claim that the district court erroneously treated him as an adult, failing to place the burden of proof on the State and provide the other protections for juveniles required in an amenability determination, focuses on comments made by the court from the bench. We note that it is settled law that the oral statements of a judge in exploring and articulating his ruling do not constitute findings and conclusions, and "error may not be predicated thereon." *Balboa Constr. Co. v. Golden*, 1981-NMCA-157, ¶ 26, 97 N.M. 299, 639 P.2d 586. The court correctly describes Child as a "child" or a "juvenile" in its written findings, not as a "man" or a "gentleman" and correctly places the burden of proof on the State by clear and convincing evidence. We therefore may not predicate error on the court's oral statements.

**B.     The District Court Weighed the Experts' Recommendations**

**{18}** Child next claims that the district court erred in disregarding the unanimous opinion of the forensic psychologists who examined Child, administered psychological tests, reviewed Child's history and record, and concluded that Child is amenable to treatment. The court made the following finding of fact concerning the experts' recommendations:

> Although the opinions of Dr. Humes and Dr. Roll express a positive outlook for [Child]'s prospects for rehabilitation, they are each qualified and they agree that it is difficult to predict future behavior. . . . It is obvious that [Child] has significant issues to be addressed, most notably his propensity for violence and drug abuse. These are long term issues, that may pla[g]ue [Child] for the rest of his life. The [c]ourt cannot say, with any reasonable likelihood, that [Child] will be sufficiently rehabilitated within the timeframe available for a juvenile sentence, approximately two years and four months. Releasing him to the public, with no oversight, in that time frame, would not reasonably protect the public.

**{19}** Consistent with the general rule in New Mexico, *see In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 14, when the district court acts as the finder of fact at an amenability hearing, the court may disregard expert testimony. *See Nehemiah G.*, 2018-NMCA-034, ¶ 56 (recognizing that "a district court conducting an amenability hearing may disregard expert testimony"). This authority, however, is not unlimited. The district abuses its discretion if it arbitrarily disregards expert opinion; the court "must have some rational basis for doing so." *Id.* ¶ 57.

**{20}** The district court in this case begins its finding on the seventh statutory factor—the prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the child in existing juvenile facilities—by acknowledging the positive outlook expressed by the experts about Child's prospects for rehabilitation. *See* § 32A-2-20(C)(7). Having considered the experts' opinions, however, the court found that the experts' reports did not satisfactorily resolve the court's concerns about whether Child's longstanding propensity for violence and drug abuse can be resolved before Child's release to the community at age twenty-one. The court views the expert opinions about Child's potential for rehabilitation within the two years and four months remaining until Child's twenty-first birthday as not unqualified.

**{21}** Our review of Dr. Humes', Dr. Rolls', and CYFD's reports supports the district court's reading of the experts' recommendations as not unqualified. All three reports review Child's history of drug use: Child used marijuana beginning in the fourth grade, and methamphetamine daily beginning in middle school. The reports describe Child's history of violence as beginning well before Victim's murder and continuing with Child being charged with battery twice in 2017, the year following the murder. One of the battery charges involved injury to another juvenile while Child was in custody. Despite her recommendation for juvenile rehabilitation, Dr. Humes acknowledges that "[Child] continues to be at risk for future criminal activities, particularly if he begins using drugs again or allows himself to be drawn into gang activities." Dr. Humes recommended that

Child's rehabilitation in an adolescent treatment setting be "followed by careful monitoring of his behavior and a focus on relapse prevention[.]" It is this combination of treatments that she finds "likely to assist him in becoming a young man who can make positive decisions about his life, and who can resist a return to an antisocial lifestyle." CYFD's report also acknowledges that Child would need transition services following his release from a treatment facility at age twenty-one. CYFD informs the court that "[a]ftercare services can be recommended to the client, however, there is no court oversight or court jurisdiction to help ensure that they are followed up on." Notably, none of the experts explicitly states that Child is amenable to rehabilitation by the age of twenty-one, in slightly more than two years, rather than at some future date.

**{22}**    The district court's written findings in this case show that the district court considered the evidence with care, weighing each of the statutory factors. We cannot say that the court's decision to give greater weight to the undisputed facts surrounding the commission of Child's crime and to Child's admitted propensity for drug addiction and history of violence was irrational. *See Nehemiah G.*, 2018-NMCA-034, ¶ 60 (noting that the court is permitted to find the violence of the crime more persuasive than the experts' opinions). The court's rejection of the experts' recommendations, pointing out that the reports were not unqualified, and citing the inherent uncertainty of expert predictions, is consistent with the court's obligation to "carefully balance the individual and societal interests at stake and to determine whether the delinquent child can be reintegrated into public life by the time he or she turns twenty-one." *Id.* ¶ 24. We therefore conclude that the court did not abuse its discretion when it found by clear and convincing evidence in the record that Child was not amenable to treatment or rehabilitation by age twenty-one. *See id.* ¶ 65 ("We do not reweigh the evidence and will not substitute our judgment for that of the district court." (alteration, internal quotation marks, and citation omitted)).

## C.    The District Court Considered Child's Maturity and Upbringing

**{23}**    Finally, Child criticizes the district court's assessment of the fifth statutory factor—the maturity of the child at the time of the offense. The court's finding of fact on the fifth factor relies primarily on the descriptions of Child's upbringing included in each of the three experts' reports. The court found that Child was very immature at the time of the offense, "due primarily to his horrendous upbringing, fueled by poor parenting, a lack of guidance and structure in his childhood, and drug addiction." Child does not disagree with the court's finding of fact. He instead argues that the court failed to weigh this factor strongly enough in favor of juvenile rehabilitation.

**{24}**    Although the court's oral remarks at the hearing show some confusion about how to weigh Child's immaturity and the fact that a child's brain development continues past age twenty-one, we are bound by the written findings of the court, which correctly weighed this factor in favor of a juvenile sentence. *Rangel v. Save Mart, Inc.*, 2006-NMCA-120, ¶ 26, 140 N.M. 395, 142 P.3d 983 (holding that we do not predicate error on oral remarks when a court has made written findings of fact).

**CONCLUSION**

**{25}** Although we affirm the court's decision, we note the difficulty of the decision that confronts our district court judges when the court is faced with a teenager who has committed a violent crime. As this case illustrates, our district courts are required by the existing statute to make a prediction about a child's response to treatment and the likelihood that the child will reoffend following treatment. As our Supreme Court has noted, "the fallibility and lack of precision inherent in the amenability determination render certainties virtually beyond reach in most situations." *State v. Rudy B.*, 2010-NMSC-045, ¶ 38, 149 N.M. 22, 243 P.3d 726 (internal quotation marks and citation omitted).

**{26}** When the crime committed by the child was violent and the child is within a few years of age twenty-one when the amenability determination is made, the court is often forced to send the child to prison rather than take the risk that the child will reoffend upon release at age twenty-one. This unfortunate result for the child and for society could be avoided, better serving the legislative purpose of the Delinquency Act, by permitting the district court to conditionally send a child for treatment and then, later, at age twenty-one, revisit the sentence with knowledge of how the child has actually performed. The ability to impose an appropriate sentence at age twenty-one, if rehabilitation has not been achieved, would allow our courts to fully implement legislative intent to treat "children . . . as children so long as they can benefit from the treatment and rehabilitation provided for in the Delinquency Act" while also having the necessary assurance that the public is protected. *Jones*, 2010-NMSC-012, ¶ 32.

**{27}** For the reasons stated above, we affirm the district court's finding that Child is not amenable to treatment as a juvenile.

**{28} IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**MEGAN P. DUFFY, Judge**