## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMSC-012

Filing Date: February 16, 2010

Docket No. 30,766

STATE OF NEW MEXICO,

      Plaintiff-Respondent,

v.

CURTIS JONES,

      Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Jay W. Forbes, District Court Judge**

Hugh W. Dangler, Chief Public Defender
JK Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Gary K. King, Attorney General
James W. Grayson, Assistant Attorney General
Santa Fe, NM

for Respondent

Marsha Levick
Philadelphia, PA

for Amicus Curiae
Juvenile Law Center

## OPINION

**BOSSON, Justice.**

**{1}** Defendant Curtis Jones, age 17 at the time, was originally charged as a serious

youthful offender with first-degree murder of an infant child. The prosecution eventually dismissed the murder charge and substituted child abuse resulting in death—a youthful offender offense—to which Defendant eventually pled guilty, agreed to an adult disposition, and received an adult sentence of 18 years imprisonment. In sentencing Defendant as an adult, the court did *not* first determine whether Defendant was amenable to treatment or rehabilitation as a juvenile.

**{2}**    Defendant argues that once the State dismissed the first-degree murder charge, he became an alleged youthful offender, not a serious youthful offender, making him eligible for a juvenile sentence. As a youthful offender, Defendant asks us to hold that the children's court lacked the authority to sentence him as an adult without first determining his amenability to treatment or rehabilitation as a juvenile, even if he did not ask for such a hearing and appeared to waive it. He now asks permission from this Court to withdraw his plea and proceed to trial as an alleged youthful offender.

**{3}**    In construing the relevant statutes and our legal precedent, we are persuaded that Defendant is correct that he should have received an amenability determination before being sentenced as an adult. Rather than allow Defendant the opportunity to withdraw his plea, however, we hold that his plea is void. The Court of Appeals having decided otherwise, we reverse and remand to the children's court for further proceedings.

**BACKGROUND**

**{4}**    On July 22, 2004, Defendant Curtis Jones and his mother took Amy May, a one-year-old child, to the emergency room at Carlsbad Medical Center. Upon her arrival, medical personnel determined that Amy was suffering from internal bleeding, a skull fracture, and a bite mark on her right cheek. Because of the extent of her injuries, Amy was transferred to the University Medical Center in Lubbock, Texas, where she died a short time later. The subsequent medical examination yielded symptoms consistent with Amy having been violently shaken by someone and possibly striking her head. The physician who performed the examination also found signs of severe rectal trauma, anal tearing, and a contusion around her anus.

**{5}**    Defendant, who was 17 years old at the time, explained Amy's injuries to hospital personnel and later to a law enforcement officer. According to Defendant, on the morning in question, his mother placed Amy on the couch for a nap and left the house to make a phone call at a nearby club. Defendant, who was then alone in the house with Amy, heard Amy crying a few minutes later. Defendant went to check on her and found her lying on the livingroom floor. Defendant picked Amy up to soothe her, and she stopped crying and began talking to him. A few moments later, however, she tensed up and stopped breathing. Defendant attempted to perform CPR and managed to revive her. He took her to the club to find his mother, and the three of them got a ride to the hospital. After hearing Defendant's explanation, which was largely identical to his mother's, medical personnel concluded that Amy's injuries were inconsistent with his story and contacted law enforcement.

2

**{6}**     Ten days later, Defendant was charged with first-degree murder and bound over for trial.  The State later amended the criminal information to add two counts of criminal sexual penetration of a minor.  Because the alleged murder took place when Defendant was 17 years old, he was charged as a serious youthful offender and set to be tried and sentenced as an adult.  Shortly thereafter, Defendant moved the court to treat him as a juvenile, claiming that certain provisions of the Children's Code are unconstitutional because they allow a juvenile to be sentenced as an adult without the benefit of a jury finding that the juvenile is not amenable to treatment as a child.  The court denied the motion.

**{7}**     As the State was building its case against Defendant, the prosecution dropped the first-degree murder charge and amended the information, charging Defendant instead with child abuse in the first degree.  NMSA 1978, § 30-6-1(E) (1973).  Shortly before trial, Defendant entered into a plea agreement with the State in which he pled no contest to the child abuse charge and agreed to be sentenced as an adult.  In return, the State dropped the two counts of criminal sexual penetration of a minor.  The plea agreement included a provision stating, "There is no agreement as to sentencing other than that Defendant agrees to be sentenced as an adult."  (Emphasis omitted.)  The trial court accepted the plea and ordered a psychological evaluation of Defendant prior to sentencing.

**{8}**     During the course of the evaluation, Defendant claimed for the first time that he was innocent and that his mother was responsible for Amy's death.  Defendant moved the court to allow him to withdraw his plea.  After a lengthy hearing in which Defendant testified and introduced multiple reports, transcripts, and prior testimony, the trial court denied the motion and sentenced Defendant to the maximum adult sentence allowable; an 18-year prison term plus two years of parole.  The trial court also found that Defendant's crime was a serious violent offense, thereby limiting his chance for early release for good behavior under NMSA 1978, Section 33-2-34(A)(1) (1988).  The court did not conduct a hearing to determine whether Defendant was amenable to treatment as a juvenile in lieu of an adult sentence in prison.

**{9}**     Defendant appealed, arguing that (1) only the children's court, and not the district court, had jurisdiction over him once the State dropped its first-degree murder charge, and (2) the district court erred in refusing to allow Defendant to withdraw his plea and proceed to trial.  In a memorandum opinion, our Court of Appeals affirmed Defendant's conviction.  Defendant petitioned for review, and we granted certiorari.

**DISCUSSION**

**Juvenile Offender Categories**

**{10}**     We explained in *State v. Muniz*, 2003-NMSC-021, ¶ 6, 134 N.M. 152, 74 P.3d 86, that our Delinquency Act, NMSA 1978, §§ 32A-2-1 to -32.1 (1993, as amended through 2009), establishes three classes of juvenile offenders:  serious youthful offenders, youthful offenders, and delinquent offenders.  *See* § 32A-2-3(C), (H) and (J).  A child's placement

3

in one of those three categories determines (1) which rules of procedure apply at trial, and (2) the potential post-adjudication consequences the child will face if the State proves its case.

**{11}**  The procedural and post-adjudication requirements pertaining to serious youthful offenders and delinquent offenders are relatively straightforward. On the one hand, the serious-youthful-offender category is limited to juveniles between the ages of 15 and 18 who are charged with first-degree murder. Section 32A-2-3(H). Once charged with first-degree murder, a serious youthful offender is no longer a juvenile within the meaning of the Delinquency Act, and therefore is no longer entitled to its protections. *Id.* As a result, serious youthful offenders are subject to the Rules of Criminal Procedure for the District Courts applicable to adults and are automatically sentenced as adults if convicted. *See id.*; Rule 10-101(A)(2)(a) NMRA.

**{12}**  A delinquent offender, on the other hand, is a child under the age of 18 who is determined to have committed a delinquent act—an act that, if committed by an adult, would be a crime less serious than first-degree murder or one of the enumerated offenses of a youthful offender. *Compare* § 32A-2-3(A) (listing various delinquent acts, including certain traffic offenses, alcohol or drug-related offenses, and property-related offenses) *with* § 32A-2-3(J) (listing youthful offender offenses, including second-degree murder, kidnaping, criminal sexual penetration, and abuse of a child that results in great bodily harm or death). Delinquent offenders are subject to the Children's Court Rules and can only be sentenced as juveniles. *See* Rule 10-101(A)(1).

**{13}**  The requirements for youthful offenders, by contrast, are more complicated. Youthful offenders are delinquent children who potentially face either juvenile or adult sanctions, depending on the outcome of a special proceeding after adjudication known as an amenability hearing. A youthful offender is a child between the ages of 14 and 18 who is either (1) adjudicated guilty of any of a series of listed offenses which have less serious consequences than first-degree murder, including child abuse resulting in great bodily harm or death, or (2) adjudicated of any felony offense after having been adjudicated of three separate felony offenses in the preceding three years. *See* § 32A-2-3(J). The youthful offender category also includes children who are 14 years old and adjudicated of first-degree murder. *Id.*

**{14}**  Like serious youthful offenders, alleged youthful offenders may be subject to the Rules of Criminal Procedure for the District Courts, *see* Rule 10-101(A)(2)(b), and may be sentenced as adults, *see* § 32A-2-20. However, unlike a serious youthful offender, an alleged youthful offender is not *automatically* treated as an adult. To treat a child as a youthful offender—subject the child to adult sanctions—the State must comply with certain procedural requirements of the Delinquency Act and the Children's Court Rules. *See* § 32A-2-20 (providing that before the court can impose adult sanctions, the State must give notice of its intent to invoke an adult sentence, and that within 10 days of giving notice of its intent to invoke an adult sentence, the State shall hold a preliminary hearing or a grand jury

4

proceeding to determine if there is probable cause to support the allegations against the child); *see also* Rule 10-213 NMRA (providing that the State may give notice to invoke an adult sentence within 10 days after the filing of the petition and that the court may, for good cause shown, permit the State to file its notice of intent at any time before the commencement of the adjudicatory proceeding, and that within 15 days of the State's notice of intent to seek adult sanctions, the court will hold a preliminary inquiry, unless the case has been presented to a grand jury or the child has waived his right to same).

**{15}**     Most significantly, before the trial court may sentence an adjudicated youthful offender as an adult, the court must make two findings:  (1) the child is not amenable to treatment or rehabilitation, and (2) the child is not eligible for commitment to an institution for the developmentally disabled or mentally disordered.  *See* § 32A-2-20(B).  The court must make these findings after considering evidence related to the youthful offender's history, the nature of the crime, and the child's potential threat to the public.  *See* § 32A-2-20(C).

**With Dismissal of the Murder Charge Defendant Became an Alleged Youthful Offender**

**{16}**     Defendant contends that once the State dropped the first-degree murder charge, he should have been treated as a youthful offender from then on, rather than a serious youthful offender.  The distinction is important because, as the above framework suggests, the consequences of being labeled a "serious youthful offender" arise early—generally at the charging stage—rather than after notice and a hearing or post-adjudication.

**{17}**     This means that juveniles aged 15 and up who are charged with first-degree murder are treated differently from the start than children charged with less serious offenses.  *See Muniz*, 2003-NMSC-021, ¶ 15.  For example, as explained above, the Rules of Criminal Procedure for the District Courts apply to the proceedings instead of the Children's Court Rules.  Also, the State is not required to give notice of its intent to seek adult sanctions. Unlike a child who allegedly commits a delinquent act or a youthful offender offense, a serious youthful offender may be detained in the general adult population of a county jail while awaiting trial. *Compare* § 32A-2-12(E)(3) (providing that a serious youthful offender may be detained in a county jail) *with* § 32A-2-12(A) (providing that an alleged delinquent offender may be detained in a foster home, a facility operated by a licensed child welfare services agency, a shelter-care facility or a detention facility for alleged delinquent children, the child's home or place of residence, or any other suitable place—other than a facility for the long-term care and rehabilitation of delinquent children), *and* § 32A-2-12(B) (providing that an alleged youthful offender may be detained in a facility for alleged delinquent children or in any other suitable place—other than a facility for the long-term care and rehabilitation of delinquent children).  And most importantly, for our purposes, a serious youthful offender is not entitled to an amenability hearing because, upon conviction of first-degree murder, the child *must* receive an adult sentence.

5

**{18}** The State argues, and the Court of Appeals agreed, that under this Court's holding in *Muniz*, Defendant remained a serious youthful offender even after the prosecution dropped the first-degree murder charge. 2003-NMSC-021. In *Muniz*, the defendant was a serious youthful offender who, in exchange for the State dropping its first-degree murder charge, pled guilty to tampering with evidence and conspiracy to tamper with evidence. *Id.* ¶ 1. The trial court sentenced Muniz as an adult, despite his objection that he could only be sentenced as a juvenile, because the two offenses to which he pled guilty were only delinquent acts. *Id.* ¶ 3. The Court of Appeals agreed with Muniz and reversed. On certiorari, we reinstated the child's adult sentence, holding that the trial court retained the authority to sentence the defendant as an adult. *Id.* ¶ 18. We reasoned that the Legislature, by creating the serious youthful offender classification, expressed an intent "to treat those children charged with first degree murder differently than other children, even if ultimately those children are not found guilty on the first degree murder charge." *Id.* ¶ 10.

**{19}** We note first that our holding in *Muniz* was largely abrogated by the Legislature in 2005 when it added two provisions to the Delinquency Act. Section 32A-2-20(G) and (H) explicitly state that a serious youthful offender who is adjudicated for a delinquent act other than first-degree murder must be sentenced as either a youthful offender or a delinquent offender, depending on the nature of the adjudicated act. These amendments effectively rejected the core of our holding in *Muniz*—that the trial court retains the authority to sentence a serious youthful offender as an adult, regardless of the act for which he is adjudicated.

**{20}** However, even if *Muniz* were still effective, we agree with Defendant that this case is different. In *Muniz*, the prosecution did not drop the first-degree murder charge until it entered into a plea agreement with the defendant. 2003-NMSC-021, ¶ 2. In this case, the State—with no prompting from Defendant or the trial court—voluntarily dismissed the first-degree murder charge against Defendant, after recognizing, to its credit, that it lacked the evidence to prove the crime. *See* Rule 16-308(A) NMRA ("The prosecutor in a criminal case shall . . . refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause . . . ."). Our reasoning in *Muniz*, that the Legislature intended "to treat those children charged with first degree murder differently," cannot apply to a situation where the State no longer intends to treat the child "differently." Where the charge of first-degree murder is brought and then dismissed, it is unfair to subject the erroneously charged child any longer to the potential consequences of serious youthful offender status.

**{21}** The State argues that its decision to drop the first-degree murder charge "is no different than a similar conclusion by a judge at the directed verdict stage or by a jury during deliberations." We disagree. By dropping the murder charge of its own volition early in the proceeding, the State was acknowledging that its initial suspicions about murder were not borne out by further investigation. That is not the same conclusion a judge or jury makes after a full airing of argument and fact. Nor is it the same decision that a prosecutor makes when dropping a charge after negotiation and compromise for the purpose of securing a plea. *See Muniz*, 2003-NMSC-021.

6

**{22}** We, therefore, hold that Defendant was not a serious youthful offender when he entered into his plea agreement, because he was no longer charged with first-degree murder at the time of his plea. Rather, from the moment the State dropped the first-degree murder charge, Defendant was a child charged with a youthful offender offense—a potential youthful offender—and as such, he was entitled to the full range of protections afforded by the Delinquency Act, which are discussed more fully below.

**Section 32A-2-20 Requires an Amenability Hearing**

**{23}** Defendant argues that prior to adult sentencing, "it is a *requirement* that the court find the child is not amenable to treatment" and that "[t]he child *must* be given a hearing on his amenability." (Emphasis added.) We view this argument as an assertion that the court lacks the authority to impose an adult sentence on a child without first making a determination that the child is not amenable to treatment or rehabilitation.

**{24}** Section 32A-2-20 is the relevant provision of the Delinquency Act that sets forth the responsibilities of the trial court for determining whether a youthful offender is amenable to treatment or rehabilitation.[1] The statute describes the steps the court must take before it can sentence a youthful offender as an adult:

> If the children's court attorney has filed a notice of intent to invoke an adult sentence and the child is adjudicated as a youthful offender, the court *shall* make the following findings in order to invoke an adult sentence:
>
> (1) the child is not amenable to treatment or rehabilitation as a child in available facilities; and
>
> (2) the child is not eligible for commitment to an institution for the developmentally disabled or mentally disordered.

Section 32A-2-20(B) (emphasis added). Admittedly, this section is silent about whether the court must make an amenability determination even where, as here, the youthful offender agrees to be sentenced as an adult. But the plain language "*shall* make the following findings in order to invoke an adult sentence" strongly suggests that the Legislature intended the court to make an amenability determination whenever it considers imposing an adult sentence. An amenability analysis is a condition precedent to a court invoking an adult sentence.

---

[1] In 2009, the Legislature altered this provision from the version that was in effect when Defendant was sentenced. The alterations are limited to one of the enumerated factors the judge must consider in determining whether the child is amenable to treatment or rehabilitation and do not affect our analysis.

7

*Legislative History of the Amenability Hearing*

**{25}**     To further inform ourselves regarding legislative intent, we look to the history of the Children's Code and to the Code as a whole. *See N.M. Dep't of Health v. Compton*, 2001-NMSC-032, ¶ 18, 131 N.M. 204, 34 P.3d 593.  The Legislature adopted New Mexico's first Juvenile Code in 1917, entitled "An Act Defining Juvenile Delinquents, Providing for Their Reformation or Punishment and Providing for the Punishment of Those Who Contribute to Such Delinquency." *See* 1917 N.M. Laws, ch. 4.  Prior to that date, a juvenile charged with a criminal offense was treated "no differently than an adult." *Peyton v. Nord*, 78 N.M. 717, 723, 437 P.2d 716, 722 (1968).  The Code established a juvenile court in each county and vested it with "exclusive original jurisdiction," over juvenile delinquents.  1917 N.M. Laws, ch. 4, § 2; *see also* 1921 N.M. Laws, ch. 87, § 1 (amending 1917 N.M. Laws, ch. 4, § 2).  The Code defined a juvenile delinquent as a child under the age of 16 who

> violates any laws of this state or any ordinance of any city, town or village within this state, or who is incorrigible, or who knowingly associates with thieves, vicious or immoral persons, or who is growing up in idleness or crime, or who knowingly visits or enters a house of prostitution, or who knowingly visits any saloon or dram-shop where intoxicating liquors are sold, or who wanders about the streets in the night-time without being on any lawful business or occupation, or who patronizes or visits any public pool-hall, or who habitually wanders in the railroad yards or tracks or habitually jumps or hooks onto any moving train or habitually enters any car or engine without lawful authority, or who habitually uses vile, obscene, vulgar, profane or indecent language in public places, or is guilty of immoral conduct in any public place or about any school house, or who having no responsible parent or guardian, shall habitually violate the provisions of the law with reference to attendance on public schools.

1917 N.M. Laws, ch. 4, § 1.  The Code further specified that a child found delinquent would be adjudged a "ward of the juvenile court," and that such an adjudication could not "be deemed to be a conviction of crime." *Id.* § 5. Interestingly, nothing in the Code allowed a juvenile delinquent to be tried or sentenced as an adult. *But see In re Santillanes*, 47 N.M. 140, 159-60, 138 P.2d 503, 515-16 (1943) (holding that once a child fits the definition of "incorrigible," he must be tried criminally for subsequent delinquent acts).  With the exception of raising the age of a juvenile from 16 to 18, *see* 1929 N.M. Laws, ch. 74, § 1, the Code remained largely unchanged for several decades.

**{26}**     The Legislature first addressed whether a child could be tried and sentenced as an adult when it enacted the 1943 amendments to the Code:

> [N]othing in this Act shall be construed to prevent any person of whatever age from being charged with the commission of a felony under the laws of this state and prosecuted therefor in the District Courts of this state, and upon

conviction may be sentenced to the State Penitentiary in conformity with the criminal laws of this state in the same manner as any person.

1943 N.M. Laws, ch. 40, § 4 (emphasis omitted). Thus, the act of charging a juvenile *of any age* with a felony was enough to try the child as an adult and impose an adult sentence upon conviction.

**{27}** This expansive approach to the criminal treatment of juveniles was tempered by the 1955 amendments to the Code. That version of the Code restricted adult treatment to "juvenile[s] over the age of fourteen years." 1955 N.M. Laws, ch. 205, § 9. The Legislature further limited the range of children who could be treated as adults to those who are not "proper subject[s] for reformation or rehabilitation." *Id.* The amendment did not specify how the juvenile court was to determine whether a child was "a proper subject for reformation or rehabilitation." The inclusion of this language signaled the inception of the amenability inquiry that is the focus of this Opinion.

**{28}** In 1972, the Legislature revamped New Mexico's juvenile justice system when it enacted the Children's Code. *See* 1972 N.M. Laws, ch. 97. The change was likely prompted by a trio of contemporary United States Supreme Court decisions that expanded constitutional protections for juveniles. *See Kent v. United States*, 383 U.S. 541, 553 (1966) (holding that a juvenile court may not waive its jurisdiction and transfer a juvenile offender to a criminal court without a hearing, effective assistance of counsel, and a statement of reasons); *In re Gault*, 387 U.S. 1, 33-34 (1967) (holding that juveniles are entitled to certain constitutional protections in adjudication proceedings, including the right to counsel); *In re Winship*, 397 U.S. 358, 368 (1970) (holding that a juvenile is entitled to proof beyond a reasonable doubt in an adjudication proceeding). The new Code, based on a model statute created by the U.S. Department of Health, Education, and Welfare, provided a comprehensive approach to the adjudication and disposition of alleged delinquent children. *See* 1972 N.M. Laws, ch. 97, § 4(C); *see also* Theodore E. Lauer, *The New Mexico Children's Code: Some Remaining Problems*, 10 N.M. L. Rev. 341, 344 (1980) ("The model statute was written to strengthen the rights of children in the juvenile court; it retained the traditional juvenile court framework in large part, but embodied what was then the most advanced thinking in terms of children's rights and procedural safeguards."). The Code also made reference to the Supreme Court adopting rules of procedure for the newly established children's court division of the district courts. *See* 1972 N.M. Laws, ch. 97, § 4.

**{29}** The 1972 Children's Code included a further refinement of the court's authority to try and sentence an alleged juvenile offender as an adult. Under NMSA 1953, Section 13-14-27(A)(1) (Vol. 3, Repl., Part 1), the children's court could waive its jurisdiction and "transfer the matter for prosecution in the district court," provided the child was 16 years of age and charged with a felony. As a condition to transfer, the court was required to hold an evidentiary hearing, similar to the amenability proceeding in today's Delinquency Act, to determine if it was appropriate to try and sentence the child as an adult. Section 13-14-27(A)(2). To justify transferring the child to the district court,

9

    (4)  the court [had to find] upon the hearing that there are reasonable grounds to believe that:

    (a)  the child committed the delinquent act alleged; and

    (b)  *the child is not amenable to treatment or rehabilitation as a child through available facilities*; and

    (c)  the child is not committable to an institution for the mentally retarded or mentally ill; and

    (d)  the interests of the community require that the child be placed under legal restraint or discipline.

Section 13-14-27(A)(4)(a)-(d) (emphasis added). Upon transfer, the child was both tried and sentenced as an adult.

**{30}** In 1975, the Legislature added a provision that lowered the threshold for transfer to district court for certain serious offenses. *See* Lauer, *supra*, at 370 (noting that the amendment was passed in reaction "to the contention that the recited safeguards were too stringent in cases of serious crimes and that the age requirement was too limiting, particularly in murder cases"). The amendment allowed the "discretionary transfer to criminal court" of matters where the juvenile was at least 15 years old and accused of murder, or at least 16 years old and accused of a felony enumerated in the statute. *See* 1975 N.M. Laws, ch. 320, § 4(A)(1) (including assault with intent to commit a violent felony, kidnaping, aggravated battery, dangerous use of explosives, aggravated burglary, and aggravated arson). When the court's discretion to transfer was invoked, it only had to hold a hearing and "consider" the child's amenability to treatment and make a finding that it had "reasonable grounds to believe that the child committed the alleged delinquent act." *Id.* § 4(A)(5); *see also State v. Doe*, 100 N.M. 649, 650, 674 P.2d 1109, 1110 (1983) (holding that the statute only requires consideration of child's amenability—not a specific finding). These relaxed requirements made it easier to transfer a proceeding to the district court for an adult trial and sentencing when the juvenile was accused of a serious felony. They foreshadowed the youthful offender and serious youthful offender categories we have today.

**{31}** In 1993, our Legislature again changed its tack, creating a unique approach to delinquency matters. *See* Daniel M. Vannella, Note, *Let the Jury Do the Waive: How* Apprendi v. New Jersey *Applies to Juvenile Transfer Proceedings*, 48 Wm. & Mary L. Rev. 723, 753 (2006); *see also* Kelly K. Waterfall, Note, State v. Muniz: *Authorizing Adult Sentencing of Juveniles Absent a Conviction that Authorizes an Adult Sentence*, 35 N.M. L. Rev. 229, 231 (2005) (noting that New Mexico joined a nationwide movement to "crack down on juvenile crime, and generally . . . expand[] eligibility for criminal court processing and adult correctional sentencing"). By enacting the Delinquency Act, which is still in force today, the Legislature established the now-familiar juvenile offender trichotomy described

in the first section of this Opinion. As previously discussed, the Act provides that only serious youthful offenders charged with first-degree murder can be tried in district court and automatically sentenced as adults if convicted. All others remain in the juvenile system until after adjudication and may be sentenced as adults only after an amenability hearing.

**{32}** Thus, on the one hand, the Delinquency Act made it easier to prosecute a child charged with first-degree murder as an adult—a transfer hearing is no longer necessary. On the other hand, the Act extended the protections of the juvenile system to all other alleged juvenile offenders by treating them as children throughout the adjudication process[2]—effectively eliminating the trial court's ability to waive or transfer a juvenile proceeding. We interpret this legislative history as evidence of an evolving concern that children be treated as children so long as they can benefit from the treatment and rehabilitation provided for in the Delinquency Act.

**{33}** With this most recent version of the Children's Code, the Legislature moved away from an approach that had previously afforded wide latitude to the courts in sentencing children as adults. It is no longer the case that a child accused of any felony potentially can be tried and sentenced as an adult. *Compare* NMSA 1953, § 13-14-27 (1972, as amended through 1975) *with* § 32A-2-3(J) (2009) (listing offenses that expose a child to adult sanctions). Similarly, with the exception of a serious youthful offender, the Legislature no longer allows a child to be sentenced as an adult without the court first finding that the child is not amenable to treatment. *Compare* NMSA 1953, § 13-14-27.1 (1975) *with* § 32A-2-20(B)(1) (2009).

---

[2] Rule 10-101(A)(2)(b) provides that, unless the Children's Court Rules specifically provide, the Rules of Criminal Procedure for the District Courts apply to alleged youthful offenders after the State gives notice of its intent to invoke adult sanctions. We adopted the Rule shortly after the 1993 enactment of the Children's Code. Our unpublished commentary indicates that because an alleged youthful offender potentially faces an adult sanction, we chose to apply the Rules of Criminal Procedure in an effort to provide more protections than the Children's Court Rules do. Specifically, we intended to extend the right to bail, the statutory right to three telephone calls within 20 minutes after detention, and in a warrantless arrest and detention case, the right to be given a copy of the criminal complaint prior to transfer to custody of a detention facility, and the right to a prompt probable cause determination. With the exception of the right to bail, we are no longer convinced that the above-mentioned rights justify forfeiting the additional protections afforded juveniles in the Children's Court Rules. *Compare, e.g.*, Rule 10-243 NMRA (providing that the adjudicatory hearing shall commence within 30 days for a child held in detention and within 120 days for a child not in detention) *with* Rule 5-604 NMRA (providing that a trial shall commence within six months). The issue is beyond the scope of this Opinion, but we encourage the Children's Court Rules Committee to revisit the question of which rules best protect the rights and interests of children.

11

**{34}**     Taken as a whole, this history demonstrates a carefully calibrated grant of judicial authority to sentence children as adults.  In light of the relatively long lineage of the amenability proceeding, its continued presence in the Delinquency Act cannot be ignored or tacitly diminished.  We are persuaded that the Legislature intended to make an amenability determination a necessary predicate to the court's exercise of adult sentencing authority.  *Cf. Kent*, 383 U.S. at 560-61 (holding that a transfer hearing is a "critically important proceeding" because, under a juvenile statutory scheme, "non-criminal treatment is to be the rule—and the adult criminal treatment, the exception" (internal quotation marks and citation omitted)).

### Purpose of the Amenability Hearing

**{35}**     Our interpretation of legislative intent is also supported by the primary purpose of the Act, which is

> consistent with the protection of the public interest, to remove from children committing delinquent acts the adult consequences of criminal behavior, but to still hold children committing delinquent acts accountable for their actions to the extent of the child's age, education, mental and physical condition, background and all other relevant factors.

Section 32A-2-2(A).  Thus, unlike the adult criminal justice system, with its focus on punishment and deterrence, the juvenile justice system "reflects a policy favoring the rehabilitation and treatment of children." *State v. Jose S.*, 2007-NMCA-146, ¶ 16, 142 N.M. 829, 171 P.3d 768.

**{36}**     The potential consequences flowing from a juvenile disposition clearly evince the Legislature's consistent intent to protect children, if at all possible, from the adult consequences of criminal behavior.  For example, instead of being "convicted" and "sentenced" like an adult, a delinquent child is "adjudicated" and receives a "disposition" that "shall not be deemed a conviction of crime."  Section 32A-2-18(A); *see also, e.g.*, 1917 N.M. Laws, ch. 4, § 5 (providing that an adjudication of juvenile delinquency cannot be deemed a conviction of crime). Similarly, a juvenile disposition does not carry with it any of the "civil disabilities ordinarily resulting from conviction of a crime" and cannot "operate to disqualify the child in any civil service application or appointment."  Section 32A-2-18(A). The Legislature also severely curtailed the admissibility in a subsequent proceeding of a juvenile disposition and any evidence offered against a child in a juvenile hearing. *See id.* (stating that a juvenile disposition and supporting evidence can only be used in sentencing proceedings after the conviction of a felony "for the purpose of a presentence study and report").

**{37}**     Similarly, Section 32A-2-19 delimits the court's authority and discretion to hold a child accountable after being adjudicated delinquent.  The court may impose a fine, order the child to pay restitution, or place the child on probation. Section 32A-2-19(B).  The court

may also transfer legal custody of the child to "an agency responsible for the care and rehabilitation of delinquent children" for commitment to a "facility for the care and rehabilitation of adjudicated delinquent children" for a period of up to two years that can be extended year-by-year until the child's twenty-first birthday. Section 32A-2-19(B)(1)(a); *see also* § 32A-2-23(D), (E) (allowing prior to expiration of long-term commitment or judgment of probation, as provided in Section 32A-2-19, the court may extend for additional year until child reaches 21 if it finds necessary). These measures reflect the Legislature's intent to insulate delinquent children from the potentially life-long consequences under the adult criminal justice system that may flow from a bad decision. *Cf. Roper v. Simmons*, 543 U.S. 551, 570 (2005) ("[T]he relevance of youth as a mitigating factor derives from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside." (Internal quotation marks and citation omitted.)).

**{38}** The amenability hearing is the sole device provided by the Legislature to determine whether, for a specific youthful offender, the above-mentioned consequences can be effective. The finding of non-amenability is the trigger for the court's authority to sentence a youthful offender as an adult. *See Muniz*, 2003-NMSC-021, ¶ 16. The finding gives the court the discretion to impose the "adult consequences of criminal behavior" on a child who would be otherwise exempt from adult punishment. Section 32A-2-2(A). Put another way, the finding of non-amenability gives the court the necessary leverage to dislodge a youthful offender from the protective dispositional scheme of the Delinquency Act.

*Waiver*

**{39}** The State concedes that Defendant was entitled to an amenability hearing, but argues that he waived that right when he agreed to be sentenced as an adult. The State relies on a lone statement from our Court of Appeals in support of its position that Defendant waived his right to an amenability hearing. *See State v. Michael S.*, 1998-NMCA-041, ¶ 11, 124 N.M. 732, 955 P.2d 201 ("Respondent agreed in the plea and disposition agreement that he could be sentenced to an adult sentence of six years, of which zero to four years could be suspended, *thereby eliminating any need for a dispositional hearing* at which the State needed to prove that the conditions pursuant to which an adult sentence may be imposed were met." (Emphasis added.)). We are aware of only one other decision from the Court of Appeals that apparently assumed that a child could waive an amenability hearing. *See State v. Muniz*, 2000-NMCA-089, ¶ 19, 129 N.M. 649, 11 P.3d 613 (remanding and giving the defendant the option to accept an adult sentence, thereby waiving his right to an amenability determination), *rev'd*, 2003-NMSC-021. *But see id.* ¶ 28 (Kennedy, J., concurring in part and dissenting in part) ("We . . . should not suggest that waiving one's status as a child under the Children's Code is an option."). However, neither case expressly considered the waiver issue, and thus neither can be relied on as authority for the State's argument.

**{40}** The State's position that Defendant waived his right to an amenability hearing finds some support in Rule 10-213(B), which expressly allows waiver of one of the directives of

13

Section 32A-2-20(A)—the right to a preliminary inquiry or a grand jury proceeding. However, the State does not cite, and we are unable to find, any such provision that allows a child to waive the right to an amenability hearing. Nothing in the Delinquency Act indicates that the Legislature ever contemplated that a court could sentence a child as an adult without first making its own determination on the question of amenability to treatment.

**{41}** Instead, Section 32A-2-20(B) suggests the opposite—the court "*shall* make" a finding that the child is not amenable to treatment or rehabilitation "in order to invoke an adult sentence." (Emphasis added.) Furthermore, Section 32A-2-20(C) lists seven factors that a trial court must consider in making its amenability determination,[3] and none of those factors, standing alone, is dispositive. The trial court must consider each of them, plus "any other relevant factor" in determining whether the child is amenable to treatment or rehabilitation. Section 32A-2-20(C)(8). Taken together, these two provisions clearly suggest that it is the court's individual responsibility to make a case-by-case determination with regard to each youthful offender's amenability to treatment or rehabilitation.

**{42}** We also find it instructive that the trial court must make these findings even for a youthful offender who has been sentenced previously as an adult. *See* § 32A-2-20(D) (stating that there is a rebuttable presumption that such a child is not amenable to treatment or rehabilitation). A court may not simply rely on a previous finding of non-amenability in a prior proceeding. This indicates that the Legislature intended the trial court to make an amenability determination each time a child is potentially exposed to adult sanctions.

---

[3] Section 32A-2-20(C) provides:
      C. In making the findings set forth in Subsection B of this section, the judge shall consider the following factors:
          (1) the seriousness of the alleged offense;
          (2) whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner;
          (3) whether a firearm was used to commit the alleged offense;
          (4) whether the alleged offense was against persons or against property, greater weight being given to offenses against persons, especially if personal injury resulted;
          (5) the sophistication and maturity of the child as determined by consideration of the child's home, environmental situation, social and emotional attitude and pattern of living;
          (6) the record and previous history of the child;
          (7) the prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the child by the use of procedures, services and facilities currently available; and
          (8) any other relevant factor, provided that factor is stated on the record.

**{43}**     This conclusion is supported by the United States Supreme Court's decision in *Kent*, 383 U.S. 541.  There, the Court considered whether the juvenile court had complied with the District of Columbia's juvenile transfer process.  *Id.* at 542.  The juvenile court waived jurisdiction and transferred the proceeding to the criminal court without making the necessary findings.  *Id.* at 548.  The Court observed, "[I]t is implicit in (the Juvenile Court) scheme *that non-criminal treatment is to be the rule—and the adult criminal treatment, the exception* which must be governed by the particular factors of individual cases."  *Id.* at 560-61 (emphasis added) (internal quotation marks and citation omitted).  As a result, the Court held that a waiver or transfer hearing was a "critically important proceeding" and "that it is incumbent upon the Juvenile Court to accompany its waiver order with a statement of the reasons or considerations therefor."  *Id.* (internal quotation marks and citation omitted).

**{44}**     Although *Kent* dealt with pre-trial transfer proceedings, we find the Supreme Court's reasoning persuasive.  Like the legislative scheme in *Kent*, the Delinquency Act makes clear that "non-criminal treatment is the rule," unless the child is charged with first-degree murder.  As a result, because the amenability hearing is the exclusive tool for invoking the exception of adult criminal punishment, we agree with *Kent* that it is a "critically important proceeding" and "that it is incumbent on the Juvenile Court" to follow the requirements spelled out in Section 32A-2-20 before sentencing a child as an adult.

**{45}**     Our Legislature directed the trial court to determine whether a juvenile disposition would be an effective sanction for a youthful offender.  This is undoubtedly because, as the United States Supreme Court recently recognized,  "[t]he personality traits of juveniles are more transitory, less fixed" so that "[there is] a greater possibility . . . that a minor's character deficiencies will be reformed." *Roper*, 543 U.S. at 570 (internal quotation marks and citation omitted). Furthermore, as the Court also noted, "juveniles still struggle to define their identity," so "[t]he susceptibility of juveniles to immature and irresponsible behavior means 'their irresponsible conduct is not as morally reprehensible as that of an adult.'"  *Id.* (quoting *Thompson v. Oklahoma*, 487 U.S. 815, 835 (1988)). Therefore, to sentence a child as an adult, the trial court must make a conscious determination that, in spite of the foregoing, the child is beyond reform—that instead of a chance at rehabilitation, the child must be separated from society and placed in the confines of an adult correctional facility. This is not a responsibility to be taken lightly.

**{46}**     We are convinced that the Legislature did not intend this responsibility to be bargained away.  The amenability determination is not like certain rights which can be waived.  *See, e.g.*, U.S. Const. amend. VI (guaranteeing an accused the right to a jury trial and to confront the witnesses against him).  The amenability determination implicates more than just the personal rights of a child.  The Delinquency Act requires that this determination be made "consistent with the protection of the  public interest."  Section 32A-2-2(A).  Thus, the trial court must weigh not only the interests of the child, but also the interests of the child's family and of society as a whole.  *See* § 32A-2-2.  We are hard-pressed to conceive of a decision that cuts closer to the core of society's interest than an election to give up on one of its children.  This responsibility ought not be used as currency in the plea-bargaining

process. Simply put, the amenability determination is not the child's choice to be traded away.[4]

**{47}** We note that our Court of Appeals has previously indicated much the same view, though not in an identical context. In *State v. Hunter*, 2001-NMCA-078, 131 N.M. 76, 33 P.3d 296, our Court of Appeals considered whether the trial court had the authority to sentence a serious youthful offender as an adult—after only a typical adult sentencing hearing—when he was found guilty of the youthful offender offenses of second-degree murder and tampering with evidence. The court answered in the negative, holding "[w]e deem it fundamental that children who are not convicted of first degree murder and who appear to be amenable to rehabilitation have a basic and essential right not to be sentenced as adults *unless the trial court fulfills the requirements of Section 32A-2-20(B) and (C)*." *Id.* ¶ 12 (emphasis added).

**{48}** We agree with the views expressed in *Hunter*, and we read Section 32A-2-20 as going one step further: the trial court lacks the statutory authority to impose an adult sentence on *any* youthful offender without complying with Section 32A-2-20. It follows that the parties lack the ability to bargain away the court's own responsibility. As a result, in the case before us, we reverse the Court of Appeals and hold that the trial court could not accept the plea bargain and sentence Defendant as an adult without first conducting an amenability hearing and making the necessary findings.[5] Consequently, an essential term of the plea

---

[4] Our case law is also replete with references to the mandatory nature of the amenability determination. *See, e.g.*, *State v. Stephen F.*, 2006-NMSC-030, ¶ 12, 140 N.M. 24, 139 P.3d 184 (noting that in order to make the "critical determination" of whether to sentence a youthful offender as an adult or as a juvenile, "the Children's Code *requires* the court to determine whether the child is amenable to treatment or is eligible for commitment to an institution for children with disabilities" (emphasis added)); *Muniz*, 2003-NMSC-021, ¶ 16 (holding that a serious youthful offender who pled to a delinquent offense could nonetheless be sentenced as an adult, but stating that an adult sentence is not automatic, and instead the court *must* apply the provisions of Section 32A-2-20); *State v. Ira*, 2002-NMCA-037, ¶ 3, 132 N.M. 8, 43 P.3d 359 ("To impose an adult sentence on an adjudicated youthful offender, the court *must* find that (1) the child is not amenable to treatment or rehabilitation as a child . . . ." (Emphasis added.)). *But see Michael S.*, 1998-NMCA-041, ¶ 11 (noting in dicta that the defendant, a youthful offender, waived his right to appeal all issues, including his right to an amenability hearing, except those explicitly reserved in his plea agreement).

[5] That being said, we commend the trial judge in this case for ordering a psychological evaluation of Defendant prior to sentencing but after he agreed to be sentenced as an adult. Although our criminal code treats everyone who is of majority age the same for the purposes of sentencing, trial judges have the statutory authority to sentence serious youthful offenders and youthful offenders to less than the statutory maximum. *See* NMSA 1978, § 31-18-15.1(C) (1993) (allowing a sentencing judge to reduce a serious youthful

agreement is void, and for reasons explained below, the entire plea must fall. *Cf. State v. Pieri*, 2009-NMSC-019, ¶ 33, 146 N.M. 155, 207 P.3d 1132 ("[I]f the court accepts a defendant's plea in exchange for a guaranteed, specific sentence and that sentence is not imposed, the court must give the defendant an opportunity to withdraw his or her plea.").

**{49}**   We recognize that the rule that we announce today is a new rule and that we must determine how it is to be applied. *See State v. Frawley*, 2007-NMSC-057, ¶ 35, 143 N.M. 7, 172 P.3d 144 ("'A new rule is defined as a rule that . . . was not *dictated* by precedent existing at the time the defendant's conviction became final.'" (quoting *Whorton v. Bockting*, 549 U.S. 406, 416 (2007) (alteration in original)). New rules generally apply "only to cases on direct review," and not to collateral proceedings. *Id.* ¶ 34.   Because we see no justification for applying today's rule retroactively, we hold that the rule applies only to this and all other "cases in which a verdict has not been reached and those cases on direct review in which the issue was raised and preserved below." *State v. Magby*, 1998-NMSC-042, ¶ 18, 126 N.M. 361, 969 P.2d 965, *overruled on other grounds by State v. Mascareñas*, 2000-NMSC-017, ¶ 27, 129 N.M. 230, 4 P.3d 1221.

**{50}**   As a final point, Defendant argues in the alternative that his plea agreement should be set aside because he did not waive his right to an amenability hearing in a knowing and voluntary manner.  Specifically, Defendant claims that he was never notified of his right to an amenability hearing; consequently, he did not realize that he could have been sentenced as a juvenile but for the plea agreement.  We agree with Defendant that a youthful offender must be informed of his right to an amenability determination before agreeing to be sentenced as an adult.  We further acknowledge that it does not appear from the record that Defendant was ever notified of that right.  However, in light of our holding today, we need not discuss the issue further.  Given that Defendant could not have waived his right to an amenability hearing, we need not address whether he did so knowingly and voluntarily in this instance.

**Procedural Ramifications on Remand**

**{51}**   This case presents a difficult problem on remand—unless, of course, the State decides not to pursue its case against Defendant, or, at trial, he is not adjudicated guilty of the charged offenses.  Assuming the State pursues its case, Defendant will be 23 years old

---

offender's or youthful offender's sentence by more than one-third of the basic sentence); NMSA 1978, § 31-18-15.3(D) (1993) (providing that the court may sentence a serious youthful offender to less than the mandatory adult term).  Many young adults are still in the process of developing emotionally and psychologically and may be served better by a shorter sentence that still punishes but does not transform the offender into a hardened criminal. The judge in this case had the discretion to sentence Defendant to a prison term of zero to eighteen years. The investigation the judge undertook in this case put him in a  better position to exercise that authority intelligently.

17

by the time this Opinion is filed, but the Children's Code requires that he be treated as a juvenile. *See* NMSA 1978, § 32A-1-8(A) (2009) (providing that the children's court has "exclusive original jurisdiction" over a person who is 18 years of age or older and was a child at the time the alleged act was committed). However, Defendant asks only that "[t]his case . . . be remanded so that [Defendant] may withdraw his plea and the matter can properly proceed in children's court." The State does not offer an alternative to allowing Defendant to withdraw his plea other than its argument that the plea was valid.

**{52}** At a minimum, our holding today requires us to invalidate that portion of the plea agreement requiring Defendant to be sentenced as an adult. On reflection, however, Defendant's entire plea must fall intact. *See State v. Gibson*, 96 N.M. 742, 743, 634 P.2d 1294, 1295 (Ct. App. 1981) ("[A] plea bargain stands or falls as a unit."). It would be unfair to the State to simply remand for an amenability hearing and re-sentencing when the State apparently dropped the two CSPM charges against Defendant in exchange for his agreement to be sentenced as an adult. To do so would allow Defendant to keep both the benefit of his original bargain and of our holding today. And it might be equally unfair to Defendant. We find it impossible to determine with any degree of confidence whether Defendant would have agreed to plead guilty had he been aware of his unconditional right to an amenability hearing.

**{53}** Thus, we grant Defendant his requested relief to the extent that we remand this case to the children's court where the parties may proceed in light of the voided plea agreement. *Cf. Jose S.*, 2007-NMCA-146, ¶ 22 (remanding a 21-year-old for sentencing under the Delinquency Act because the child asked for only a new sentencing hearing). Despite the apparent absurdity of re-trying Defendant at his age as a juvenile, we are hard-pressed to come up with an alternative. Furthermore, we would intrude on the exclusive domain of the Legislature if we were to interfere with the jurisdiction of the children's court. *See* N.M. Const. art. VI, § 13 (granting district courts "such jurisdiction of special cases and proceedings as may be conferred by law"); *In re Santillanes*, 47 N.M. at 148, 138 P.2d at 508 (holding that the conferring of "jurisdiction of special cases and proceedings," such as juvenile proceedings, "is at the disposal of the legislature").

**{54}** As a matter of due process and fundamental fairness, Defendant should be returned as closely as possible to his rightful position: the position he was in before the trial court sentenced him as an adult without making a determination of whether he was amenable to treatment or rehabilitation. *See State v. Vallejos*, 1997-NMSC-040, ¶ 31, 123 N.M. 739, 945 P.2d 957 ("The right to substantive due process embodies principles of fundamental fairness and entitles every individual to be free from arbitrary or oppressive government conduct."). At that time, Defendant presumptively was entitled to a disposition under the Delinquency Act—a disposition geared toward reform and reintegration into society, rather than one aimed at punishment and deterrence. This presumption of amenability to treatment or rehabilitation is the essence of our juvenile dispositional scheme. To offer Defendant less now would be unfair, despite the literal dictates of the Delinquency Act.

18

**{55}**     Therein lies the conundrum.  To our knowledge, our juvenile system is not equipped to treat or rehabilitate an individual over the age of 21; nor is our adult criminal system likely equipped to provide the type of treatment or rehabilitative opportunities that are available to a juvenile.  Defendant is in a sort of juvenile/criminal purgatory:  he has rights as a juvenile and yet he may be too old to benefit from them.

**{56}**     What is worse, the legal system and the legislative scheme of the Delinquency Act bear much of the fault for his predicament.  Defendant should have had an amenability determination over three years ago, before he served time in prison and before he lost the protections of the Delinquency Act.  As a result, if adjudicated a youthful offender, Defendant deserves—at the very least—an open-minded inquiry into the availability of alternative facilities or treatments for young adults that might approximate those available under the Delinquency Act. Therefore, in the event the State successfully pursues its case against Defendant and reaches an amenability hearing on remand, we order the trial judge to consider evidence of (1) whether Defendant is amenable to treatment or rehabilitation at his age at the time of the hearing, *and* (2) whether any available facilities or sentencing alternatives exist in the adult corrections system for providing that treatment.

**{57}**     As our Court of Appeals noted nearly eight years ago, New Mexico desperately needs a legislative solution to the sentencing gaps created by the Delinquency Act and the criminal justice system.  *See Ira*, 2002-NMCA-037, ¶¶ 25-32 (urging the Legislature to consider sentencing alternatives for juveniles and providing examples of the approaches of other jurisdictions); *id.* ¶¶ 50-55 (Bosson, C.J., specially concurring).  Defendant's situation is not unique.  *See, e.g.*, *Jose S.*, 2007-NMCA-146, ¶ 22 (noting that sentencing on remand "is complicated by the fact that Child is too old to be sentenced as a juvenile because he is twenty-one").

**{58}**     Indeed, the Delinquency Act plainly anticipates a situation where, as here, a "juvenile grown into adulthood" must be tried as a child, yet remains presumptively eligible for treatment or rehabilitation.  *Application of Johnson*, 178 F. Supp. 155, 164 (D.N.J. 1957) (holding that a Juvenile Court can properly exercise jurisdiction over individuals past the age of 18 but that the age relationship must be a reasonable one).  However, such an individual has effectively "aged out" of the rehabilitative mechanisms available under the Delinquency Act.  *See* § 32A-2-19 (providing that the children's court does not retain jurisdiction over delinquent offenders past the age of twenty-one).  As a result, the accused may receive an adult sentence for an act that was committed at an age when the accused may have lacked the ability to appreciate the gravity or consequences of his actions.  *See Roper*, 543 U.S. at 570.  Thus, the child loses any meaningful chance at treatment or rehabilitation on the one hand, *and* gets punished for an act potentially lacking the culpability required for an adult sentence.  Such a result does not accomplish the ends of either the juvenile or adult justice systems.  We urge the Legislature and any other interested groups to address this issue.

**Defendant's Remaining Issues on Appeal**

19

**{59}** Defendant makes two final arguments on appeal. First, Defendant argues that the Court of Appeals erred in holding that the *Apprendi* issue raised by Defendant at trial is not viable on appeal because Defendant is not entitled to an amenability hearing. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (holding that a criminal defendant is entitled to a finding by a jury beyond a reasonable doubt of any fact that increases a sentence beyond the maximum amount prescribed by statute). Although we reverse and hold that Defendant has a right to an amenability hearing, we decline to reach the *Apprendi* issue here, as the matter is not yet ripe for our review. Defendant never had an amenability hearing, and it remains unclear whether he ever will. Consequently, the Court of Appeals' recent decision in *State v. Rudy B.* is controlling. 2009-NMCA-104, ¶ 53, 147 N.M.45, 216 P.3d 810, *cert. granted,* 2009-NMCERT-009 (No. 31,909, Sept. 15, 2009) (holding that a youthful offender may only be sentenced as an adult after a jury finding beyond a reasonable doubt that the juvenile is not amenable to treatment or rehabilitation).

**{60}** Defendant also argues for the first time in this appeal that his sentence to an adult prison facility before the age of 21 amounts to cruel and unusual punishment under the 8th Amendment. Our Court of Appeals has addressed this question before, and we see nothing in this case that merits departing from those prior rulings. *See, e.g.*, *Ira*, 2002-NMCA-037, ¶ 24 (holding that a 91 1/2-year adult sentence for a juvenile did not constitute cruel and unusual punishment).

**CONCLUSION**

**{61}** We reverse the Court of Appeals on the issue of Defendant's right to an amenability hearing and remand to the children's court for proceedings consistent with this Opinion.

**{62}** **IT IS SO ORDERED.**

 

_____

**RICHARD C. BOSSON, Justice**

**WE CONCUR:**

_____

**EDWARD L. CHÁVEZ, Chief Justice**

_____

**PATRICIO M. SERNA, Justice**

_____

**PETRA JIMENEZ MAES, Justice**

_____

20

**CHARLES W. DANIELS, Justice**

**Topic Index for *State v. Jones*, No. 30,766**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-RH | Rehearing on Appeal |
| AE-RM | Remand |
| | |
| **CD** | **CHILDREN** |
| CD-CC | Children's Code |
| CD-CR | Children's Court |
| CD-CT | Children's Court Rules |
| CD-RE | Rehabilitation |
| CD-TC | Transfer to District Court |
| CD-SO | Serious Youthful Offender* |
| CD-YO | Youthful Offender* |
| CD-DO | Delinquent Offender* |
| CD-DA | Delinquency Act* |
| CD-AS | Adjudication/Sentencing* |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-RF | Right to Confrontation |
| CT-WR | Waiver of Rights |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-CN | Child Abuse and Neglect |
| CL-CP | Criminal Sexual Penetration |
| CL-SE | Sexual Exploitation of Children |
| CL-SX | Sexual Offenses |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-NP | Nolo Contendere Plea |
| CA-PP | Plea and Plea Bargaining |
| CA-PM | Post Conviction Proceedings |
| CA-PI | Prospective Application |
| CA-RJ | Right to Trial by Jury |
| CA-SN | Sentencing |
| | |
| **JR** | **JURIES** |
| JR-RT | Right to Trial by Jury |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |
| ST-LI | Legislative Intent |

*Denotes suggested new topic for index